**REID v. J. P. FLORIO & CO., Inc., et al.***

No. 16529.

Court of Appeal of Louisiana. Orleans.

Feb. 23, 1937.

John A. Smith, Jr., of New Orleans, for appellants.

William Boizelle and Walter M. Barnett, Jr., both of New Orleans, for appellee.

McCALEB, Judge.

Clarence J. Reid, a longshoreman, brings this suit for recovery of 400 weeks' compensation, at $20 per week, together with certain penalties imposed by law, against his employer, J. P. Florio & Co., Inc., and its

*Rehearing denied April 5, 1937.

insurer, American Mutual Liability Company of Boston, Mass.

He alleges that on March 2, 1931, while assisting in the loading of carbon black to a ship moored to the Jackson avenue wharf in the city of New Orleans, for his employer, his right knee was injured to such an extent that, as a direct result therefrom, he has been and is now totally permanently disabled from engaging in work of any reasonable character.

He sets forth that after the date of his injury and while he was totally disabled, on May 12, 1931, his employer's insurer, through its agents and physicians, wrongfully and fraudulently induced him to enter into a lump-sum settlement agreement, under the misrepresentation that he would be cured within three weeks from that date, when, as a matter of fact, he has never recovered from the accident; that he, relying on the statements of the agents of the insurance company, signed a joint petition for a lump-sum settlement with his employer and its insurer, whereby it was agreed to commute the compensation payable to him to a lump sum; that said petition was presented to the court for approval, out of his presence and without his knowledge, and was sanctioned by the court, notwithstanding that the sum he was to receive was discounted at a rate greater than 8 per cent. per annum in violation of law.

He further charges that the agent of the insurance company, one McQueen, informed him, at the time the settlement was made, that in the event he did not recover from his injuries within the stipulated period, he would be entitled to additional compensation, and that, believing this representation he signed the agreement.

Judgment is prayed for against both defendants, in solido, for 400 weeks' compensation at $20 per week, payable in a lump sum, together with a 50 per cent. penalty imposed by subsection 9 of section 1 of Act No. 242 of 1928.

The defendants appeared and filed (1) a plea of res adjudicata and (2) an exception of no cause of action, both of which were overruled by the trial court. In answer to the charges of the petition, defendants admitted the employment of plaintiff; that he was injured in the course of his duties; and that they became liable to him for compensation at the rate of $20 per week during the period of his disability. They averred that they, in good faith, had entered into a compromise agreement with the plaintiff whereby the rights of all parties were determined and forever settled; that said compromise had been approved by the court upon the joint petition of plaintiff and defendants; and that, under the terms of judgment approving the settlement, they were discharged from any further liability in the premises. They denied that the plaintiff is now disabled or that he was disabled for any period longer than that set forth in the judgment approving the lump sum settlement.

The case was tried, and the district judge, after hearing the evidence, found that the plaintiff was permanently totally disabled and granted judgment in his favor for 400 weeks' compensation at $20 per week, subject to a credit of $266.67, but rejected his demand for the 50 per cent. penalty.

Both defendants have appealed to this court. The plaintiff has answered the appeal praying that the decree be amended by awarding him recovery of the penalty claimed.

Our attention is first directed to the plea of res adjudicata. It is contended that the district judge committed error in overruling it, because the judgment of the court approving the lump sum settlement is a final decree which operates as a bar to these proceedings. The argument is not meritorious. Subsection 9 of section 1 of Act No. 242 of 1928 grants to the employee the right to receive additional compensation, notwithstanding the lump-sum settlement, even though it be approved by the court, where the amounts payable to him and commuted to settlement have been discounted at a greater rate than 8 per cent. per annum. The plaintiff charges that the settlement approved by the court was discounted at a rate greater than 8 per cent. per annum and therefore brings his case squarely within the terms of the statute. The Supreme Court has held in Taylor v. Lock, Moore & Co., 164 La. 577, 578, 114 So. 163, in discussing this question, that suits such as this are not, strictly speaking, actions to annul the judgment of lump-sum settlement, but are demands for additional compensation to which the employee was entitled as a matter of law. In such proceedings it is only necessary to allege and to show that the lump-sum amount agreed upon was less than that authorized by statute.

■ Passing on to the exception of no cause of action, counsel for defendants contends that the settlement approved by the court, which plaintiff claims is without legal effect, is not a lump-sum settlement under subsection 9 of section 1 of Act No. 242 of 1928, but is strictly a compromise settlement under the provisions of section 17 of Act No. 20 of 1914. If this be true, the plaintiff is without standing in this proceeding for his cause of action is foreclosed by the decisions of the Supreme Court in Musick v. Central Carbon Co., 166 La. 355, 117 So. 277, 280, and Young v. Glynn, 171 La. 371, 131 So. 51.

Subsection 9 of section 1 of Act No. 242 of 1928, pp. 357, 362 (amending Act No. 20 of 1914, § 8), provides:

"The amounts payable as compensation may be commuted to a lump sum settlement by agreement of the parties after having been approved by the Court as reasonably complying with the provisions of this Act; provided, that in making such lump sum settlement, the payments due the employee or his dependents, under this Act, shall not be discounted at a rate greater than eight per centum per annum; if such lump sum settlement be made without the approval of the Court, or at a discount greater than eight per centum per annum, even if approved by the court, the employer shall be liable for compensation at one and one-half times the rate fixed in this Act, and the employee or his dependents shall, at all times within two years after date of the payment of the lump settlement and notwithstanding any other provisions of this Act, be entitled to demand and receive in a lump sum from the employer such additional payment as together with the amount already paid will aggregate one and one-half times the compensation which would have been due under this Act, but for such lump sum settlement. But upon the payment of a lump sum settlement commuted on a term agreed upon by the parties, discounted at not more than eight per centum per annum and with the approval of the court, the liability under this Act of the employer making such payment shall be fully satisfied; provided, that for injuries scheduled in paragraphs 1-d and 2 of this section, no shorter term than therein set forth have been agreed upon."

And section 17 of Act No. 20 of 1914 (as amended by Act No. 38 of 1918, p. 59) reads:

"The interested parties shall have the right to settle all matters of compensation between themselves. But all agreements of settlement shall be reduced to writing and shall be substantially in accord with the various provisions of this act, and shall be approved by the Court. The agreement between employer and employee or his dependent shall be presented to the Court upon joint petition of employer and employee or his dependent, which petition must be verified by both parties. The settlement so approved shall be immediately entered as the judgment of the Court, and such judgment shall have the same force and effect and may be satisfied as other judgments of the same court."

Construing the provisions of the foregoing sections together, it will be observed that, where there is no dispute between the parties either as to (1) whether the injury is compensable or (2) as to the rate of compensation or (3) as to the duration of the disability, the employer and the employee may, by agreement, commute the amounts payable as compensation to a lump-sum settlement with the approval of the court provided that the payments due the employee shall not be discounted at a rate greater than 8 per cent. per annum, and if the amount of the settlement is discounted at a greater rate of interest, the employer shall be liable for compensation at one and one-half times the rate fixed in the statute. On the other hand, if a dispute exists between the parties either as to whether the injuries are compensable under the law or as to the rate of compensation or as to the duration of the employee's disability, the parties shall have the right to compromise and adjust their differences provided that they obtain the approval of the court. When the judge once determines that the compromise is just and fair, his decision is final and may be annulled only in case of fraud.

This is the holding in Musick v. Central Carbon Co., supra, where a compromise settlement was upheld even though it was discounted at a rate greater than 8 per cent. per annum. The court, in that case, finding that the compromise operated as a bar to plaintiff's claim to further compensation, in discussing subsection 8 of section 1 of Act No. 43 of 1922, which is now subsection 9 of section 1 of Act No. 242 of 1928, said:

"This subsection, to a certain extent, operated as a limitation on the right to effect amicable settlements, for it, in effect, prohibited an amicable settlement in a lump sum at a greater rate of discount than 8 per cent.

per annum where there was no room *for dispute as to the extent of the injury, or that the injury was caused in the discharge of the employment, or as to the average weekly wage which the employee was earning at the time."* (Italics ours).

But the opinion goes on to state that this subsection did not operate so as to preclude the parties at interest from effecting, with the approval of the court, under section 17 of the Act No. 20 of 1914 as amended by the Act No. 38 of 1918, an amicable and binding settlement of the claim for compensation in the nature of a lump-sum settlement by way of compromise *"where there existed ground for dispute,* such, for instance, as where the employee was injured and later died, and the circumstances appeared such as to leave *some doubt as to whether his death was a result of the injury, and the employer was asserting that it was not, although the amount of the settlement, had the employee's dependents brought suit and established that the injury was the cause of the death, would, when considered from the viewpoint of discount, have been at a greater rate than 8 per cent. per annum."* (Italics ours.)

In Young v. Glynn, supra, the Supreme Court again sustained the binding effect of a compromise made between the parties where a dispute existed as to the duration of the employee's injury.

But in both of the foregoing cases, the validity of the compromise was sustained only because it was found that a genuine dispute existed between the parties.

■ It is essential, under article 3071 of the Revised Civil Code, to the legality of every compromise that there be a consideration, flowing from one party to the other, so that the hope of gaining is always balanced by the danger of losing.

■ In order to determine whether the contestants in this case have compromised their differences, it is necessary to consider the agreement which was presented to the district judge as a joint petition, which reads as follows:

"To the Judges of the Civil District Court in and for the Parish of Orleans, State of Louisiana

"The joint petition of Clarence J. Reid, a resident of the Parish of Orleans, State of Louisiana, and J. P. Florio & Company, a co-partnership, and the American Mutual Liability Insurance Company, a corporation organized under the laws of the State of Massachusetts and qualified to do business within the State of Louisiana, which said insurance company carries the compensation insurance on the employees of J. P. Florio & Company, with respect represents:

"1. That Clarence J. Reid, one of your petitioners, while employed by J. P. Florio & Company and in the course of his employment sustained certain injuries to his right knee as a result of lumber toppling over on it.

"2. That at the time of the injury your petitioner, Clarence J. Reid, was earning the sum of Sixty Five (65¢) Cents per hour for a working day of ten (10) hours a day or Six Dollars and Fifty Cents ($6.50) per day, and that since the time of his injury he has been drawing $20.00 compensation, the maximum amount as set forth under Act 20 of 1914 and the acts amendatory thereto.

"3. That petitioner, Clarence J. Reid, has been placed under the attention of Doctors Edward S. Hatch and S. Geismar and has received medical treatment from them, and that the expense of this treatment will be paid by the American Mutual Liability Insurance Company.

"4. That Dr. Geismar has made a diagnosis of a disability not to exceed six (6) weeks longer.

"5. Your petitioner, Clarence J. Reid, alleges that he is desirous of moving to Memphis, Tennessee where he can be near his family and relatives as his living expenses will be smaller and he will have the pleasure of their company, and that no further medical treatment is necessary to him.

"6. Your petitioners, J. P. Florio & Company and the American Mutual Liability Insurance Company, allege that they have already paid to Clarence J. Reid the sum of One Hundred Sixty Six Dollars and Sixty Seven Cents ($166.67) covering the period of his disability.

"7. All of your petitioners show that an agreement has been entered into by and between Clarence J. Reid, J. P. Florio & Company and the American Mutual Liability Insurance Company for a lump sum settlement under the provisions of Act 20 of 1914 and the acts amendatory thereto, for the sum of One Hundred Twenty ($120.00) Dollars representing six (6) weeks period of disability at the rate of Twenty ($20.00) Dollars per week, and they desire the approval of this Honorable Court before carrying the agreement into effect.

"Wherefore, your petitioners pray that there be judgment herein in favor of your petitioner, Clarence J. Reid, and against your petitioners J. P. Florio & Company and the American Mutual Liability Insurance Co.; in solido, in the full sum and amount of One Hundred Twenty ($120.00) Dollars, and that upon the payment of this amount to Clarence J. Reid that J. P. Florio & Company and the American Mutual Liability Insurance Company be discharged of any further liability to the said Clarence J. Reid growing out of this accident, and all your petitioners pray for general and equitable relief.

"By their Attorney.
"[Signed] Samuel J. Tennent
"State of Louisiana, Parish of Orleans
"Before me, the undersigned authority, personally came and appeared Samuel J. Tennent, Jr., who, being by me duly sworn deposes and says:
"That he is the attorney for J. P. Florio & Company and the American Mutual Liability Insurance Company, and that all and singular the allegations of fact therein contained are true and correct to the best of his knowledge, information and belief.
"[Signed] Samuel J. Tennent, Jr.
"Sworn to and subscribed before me this 12th day of May, 1931.
"[Signed] Frank T. Simpson,
. "Notary Public
"State of Louisiana, Parish of Orleans
"Before me, the undersigned authority, personally came and appeared Clarence J. Reid, who, being by me duly sworn, deposes and says:
"That he is the plaintiff in the above and foregoing petition and that all and singular the allegations of fact therein contained are true and correct to the best of his knowledge, information and belief.
"[Signed] C. J. Reid
"Sworn to and subscribed before me this 12th day of May, 1931.
"[Signed] S. J. Tennent, Jr.,
"Notary Public"

It will be noted from the foregoing that no dispute existed between the parties either as to the plaintiff's right to compensation or as to the rate of compensation to which he was entitled or as to the duration of his disability. On the contrary, the plaintiff acquiesced in the representations made by the doctors for the insurance company that he would not be disabled for a longer period than six weeks. For this reason, we hold that the agreement is one for a lump-sum settlement under the provisions of subsection 9 of section 1 of Act No. 242 of 1928 and is not a compromise settlement permitted by section 17 of Act No. 20 of 1914, as amended.

But counsel for defendants further postulates that the exception of no cause of action is good because the allegations of the petition, respecting the fraud charged against defendants, are mere conclusions of the pleader. Whatever may be said about the lack of clarity of the averments of fraud, the petition plainly states a cause of action, in that it attacks the legal effect of the lump-sum settlement, on the ground that the amount payable to plaintiff was discounted at a rate in excess of 8 per cent. per annum. See Taylor v. Lock, Moore & Co., supra; Miller v. U. S. Fidelity & Guaranty Co. (La.App.2nd) 169 So. 259; McHenry v. Wall et al. (La.App. 2nd) 157 So. 632.

Prima facie evidence of the fact that the plaintiff did not receive all the compensation, to which he was legally entitled under the lump-sum settlement, is manifested by the agreement of the parties made part of the petition, which shows that although he was disabled for 16 weeks and entitled to $320 compensation, he only received from the defendants the sum of $286.67. The exception of no cause of action was therefore properly overruled.

Considering the merits of the case, it appears that after plaintiff was injured, he was placed in the care of Dr. Geismar, a physician employed by the defendant insurer. He was suffering from traumatic synovitis of his right knee (water on the knee) and Dr. Geismar, after treating him for three weeks, discharged him as cured. On April 4, 1931, plaintiff, not having recovered from the injury (although Dr. Geismar had previously discharged him as not being ill), entered the Charity Hospital of New Orleans for treatment. His injury was diagnosed by physicians at that institution as being a chronic traumatic synovitis of the right knee with adhesions. He was confined to the Charity Hospital undergoing treatment from April 4, 1931, until May 4, 1931, when he deserted the infirmary on the advice of one McQueen, an agent for the defendant insurer.

Plaintiff testified that he abandoned the Charity Hospital because McQueen told him that the doctors there would ruin his knee; that after he left the hospital, McQueen

sent him to Dr. Hatch, who advised that his condition would clear up in about six weeks. Thereupon, it was suggested that the payments of compensation due him be commuted to a lump-sum settlement and plaintiff states that when he agreed to the settlement, he was under the belief, because of the representations of McQueen, that he (plaintiff) could claim additional compensation in the event he did not recover from his ailment within the six week period.

Strangely enough, although McQueen was present in the courtroom at the trial, he did not take the witness stand and deny the evidence tendered by plaintiff. We therefore accept plaintiff's testimony as correct in this respect.

While we are of the opinion that McQueen was guilty of reprehensible conduct in advising a sick man that the doctors at Charity Hospital were doing him more harm than good and in recommending that plaintiff desert the institution, still we entertain some doubt that McQueen's conduct, respecting the lump-sum settlement, amounted to a fraud, inasmuch as plaintiff was sent to Dr. Hatch, one of the eminent orthopedic surgeons in this section of the country, for examination and treatment, and inasmuch as it was upon Dr. Hatch's diagnosis of the duration of plaintiff's disability that the settlement was effected.

Plaintiff's testimony, regarding the representation that he could claim additional compensation notwithstanding the settlement, is partially rebutted by the evidence of S. J. Tennent, Jr., who was the attorney for the defendant insurer at the time the settlement was made. Mr. Tennent says that he read the agreement prepared by him to the plaintiff and asked plaintiff if he understood that he was settling for once and all any claim for compensation he might have and that the plaintiff replied in the affirmative.

While it is true that plaintiff was not represented by counsel and was not present at the time the joint petition for settlement was submitted to the district judge for approval, we doubt that, notwithstanding McQueen's inducements, a finding of fraud would be justified under all of the circumstances of the case. We observe, however, that the law does not recognize lump sum settlements unless they are made under the eye of the court and it was the purpose of the legislature, in exacting the court's sanction of these agreements, to protect the interest of the employee. In view of the intent of the lawmakers, it might be the better practice, where settlements such as this are proposed, to have the injured employee present in court, where he is not represented by counsel, at the time the joint petition is submitted for approval, so that the judge may have the opportunity of explaining fully to him the nature of the contract and its legal effect.

█ But aside from the question of the alleged fraud in the case at bar, we are of the opinion that the lump-sum settlement is invalid and of no effect because the payments, due to plaintiff at the time it was made, were discounted at a greater rate than 8 per cent. per annum.

The agreement betwen the parties, approved by the court, quoted above, shows that the plaintiff was injured on March 2, 1931, and was totally disabled on May 12, 1931, at which time the agreement was made. It further shows that the parties stipulated that the plaintiff's disability would continue for a period of six weeks from the date of the settlement and that he was given $120 as a final lump-sum payment. The time elapsing from the date of the accident to the date of the settlement was a period of ten weeks, and plaintiff had only received from his employer the sum of $166.67 on the date the joint petition was filed. This, together with the sum of $120 paid him, amounted to $286.67, in settlement of his disability for 16 weeks at $20 per week, whereas he was entitled, under the provisions of the act, to $320. On the date of the settlement, there was compensation due plaintiff in the sum of $200 whereas he had only been paid $166.67 so that the defendant, in making the lump-sum settlement, evidently deducted or withheld from him the sum of $33.33. The payment due was therefore discounted at a greater rate than 8 per cent. per annum. The employer was only entitled to deduct therefrom the approximate sum of $1.20 for interest during the six-week period, but it, nevertheless, discounted or deducted $33.33. It follows that the plaintiff had the right to disregard the settlement as illegal and demand the compensation which would have been due him under the Act but for it.

█ This leads us to an examination of the evidence respecting the injuries suffered by the plaintiff and his ensuing disability as a result thereof.

It appears that plaintiff was admitted to Charity Hospital on April 4, 1931, suffering from a knee injury, which was diagnosed as chronic synovitis of the right knee (water on the knee). There was considerable fluid taken out of his right knee, and in its place air was injected so that X-ray photographs might be taken. These X-ray photographs were made in the Department of Radiology under the supervision of Doctors Amedee Granger and E. B. Lehman. The diagnosis of the plates shows the presence of chronic adhesive synovitis. Dr. Lehman, who testified for plaintiff, verifies this finding.

Plaintiff's chief medical witness was Dr. H. Theodore Simon, an orthopedic surgeon, in charge of one of the orthopedic services at the Charity Hospital. He testifies that on April 4, 1931, plaintiff was placed in his care and was treated for a traumatic synovitis of the right knee; the medication consisting of aspirating the fluid in the knee, compressing it, and using other forms of physiotherapy. He states that the hospital was able to take successful X-rays of the knee by injecting air therein after the fluid had been taken out and that these X-rays exhibited that there were adhesions in the knee, and that the X-ray plates introduced in evidence show definite adhesions connecting the femur. with the synovial membrane. When asked as to the length of time it takes for such an injury to become well, the doctor says:

"Well, adhesions of this sort may never become well. There are organized scar tissues in the knee, and since I have examined this man after this, and in fact, I examined him again yesterday afternoon, he has a limitation of motion in his knee. His knee flexes only slightly beyond a right angle, when normally a knee should go. back to about 35 degrees."

He further states that the plaintiff deserted the hospital on May 4, 1931, and that he again had occasion to treat plaintiff in February, 1932. Respecting the examination of plaintiff in February, 1932, he says:

"His right knee was swollen and there was a moderate increase of fluid in the knee joint. The circumference of the right knee was ¾ of an inch greater than the left knee; the right thigh showed 1¾ inches atrophy and the calf ¼ inch atrophy. The capsule of the knee joint was moderately thick and full extension was not possible, the knee bending only slightly beyond a right angle. The patella, that is, the kneecap had an excessive amount of fluid. I have a notation here that he had a decided weakness of the muscles of his right thigh."

The doctor voices the opinion that the plaintiff cannot perform heavy manual labor that would require any bending of his right knee beyond a right angle and that the adhesions in the knee are permanent. On the whole, this physician's testimony reveals that the plaintiff is totally permanently disabled to do work of any reasonable character.

The plaintiff's testimony corroborates the statement of Dr. Simon. Longshoreman's work is the only business pursuit with which he is acquainted. His education is meager, and although he has attempted to work on various occasions, the evidence reveals that he is unable to perform manual labor or do other jobs which require him to walk a great deal. His testimony on this point is corroborated by two disinterested witnesses, residents of Memphis, Tenn., whose evidence was taken by deposition.

J. Neal Brien, a monument dealer and distributor of Memphis, testified that he hired plaintiff to do some painting work in 1935; that one night while plaintiff was painting Brien's floor "he went to get up and looked like a crippled chicken and I thought probably he had been on the floor too long." This witness further states that on one occasion "when he (plaintiff) went to work he flopped over to the side"; that on other occasions in 1936 he complained about his knee and stayed home from work. Finally plaintiff was discharged because "he just couldn't get results and couldn't hold up."

Virgil Luke, who is in the trucking business in Memphis, employed plaintiff in 1935. The witness testified that Reid could not carry large packages; that on one occasion he collapsed; that he frequently "fell to the right side like"; that when plaintiff drove an automobile "he would change his foot and when he would stop he would put his left foot on the brake and set it down and stop quick."

All of this testimony deals with the condition of plaintiff's knee in 1935 and 1936 as a result of the injury sustained by him in 1931.

In order to rebut the evidence offered by the plaintiff, the defendants produced Dr. Edward S. Hatch. Dr. Hatch states that he examined plaintiff on May 3, 1931, and found him to be suffering from chronic traumatic synovitis or chronic water on the knee. He strapped plaintiff's knee and saw

him again on May 11, 1931, at which time the condition of the knee was practically the same and he has not seen plaintiff since that time. He says that under ordinary conditions, the plaintiff should have recovered within six weeks. When questioned, on cross-examination, regarding the adhesions found in plaintiff's knee by the doctors of Charity Hospital, the witness opines that he does not believe that adhesions in the knee can be discovered by X-ray.

Whether Dr. Simon or Dr. Hatch is correct with regard to the discovery of adhesions by X-ray is of no importance, because the fact remains that the plaintiff is still disabled and is unable to perform manual labor.

The district judge appointed Dr. Herman S. Gessner of New Orleans as an expert to examine plaintiff, and Dr. Gessner filed his report with the court. This report concludes with the opinion that plaintiff was free from disability and able to perform the duties of longshoreman on the day of the examination, March 17, 1932, but that he was disabled from April 4, 1931, to May 4, 1931, and from January 13, 1932, to March 17, 1932. As to the rest of the time intervening, the doctor says that there is no record of facts on which he can base an opinion.

Notwithstanding the report of Dr. Gessner and the testimony of Dr. Hatch, the district judge, in awarding compensation for 400 weeks, obstensibly adopted the testimony of Dr. Simon and we find no fault with his conclusion in this respect. On the whole, it seems to us that the plaintiff has been seriously permanently injured and there is nothing in the evidence to warrant a finding that he is a malingerer. On the contrary, the evidence discloses that he has sought employment but has been compelled to stop working because of his physical inability to perform the duties assigned to him.

█ Being of the opinion that plaintiff should recover additional compensation for a period of 400 weeks, less the amount already paid to him by the defendants, we next examine his claim for the penalty provided for by subsection 9 of section 1 of Act No. 242 of 1928. The pertinent portion of this section reads:

"* * * if such lump sum settlement. be made without the approval of the Court, or at a discount greater than eight per centum per annum, even if approved by the court, the employer *shall be liable* for compensation at one and one-half times the rate fixed in this Act, and the employee, or his dependents *shall, at all times* within two years after date of the payment of the lump settlement *and notwithstanding any other provisions of this Act,* be entitled to demand and receive in a lump sum from the employer *such additional payment* as together with the amount already paid will aggregate one and one-half times the *compensation which would have been due under this Act, but for such lump sum settlement."* (Italics ours.)

The language above quoted is clear and the penalty imposed is mandatory.

At the time the lump-sum settlement was made, the defendants deducted therefrom the sum of $33.33, which was then due and owing to the plaintiff, and their failure to pay this amount constituted a discount far in excess of the rate allowed by the statute. No explanation is given by either defendant as to why they did not pay the plaintiff the amount which he was lawfully entitled to receive. In the absence of a showing of error or mistake, we are bound by the provisions of the law to assess the penalty. Compare Brown v. J. B. McCrary Co. et al., 10 La.App. 499, 119 So. 731 (Second Circuit), wherein it was held that the penalty will not be inflicted where the settlement was obtained through the misrepresentation of the plaintiff.

For the reasons assigned, the judgment appealed from is amended so as to read as follows:

It is ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, Clarence J. Reid, and against defendants, J. P. Florio & Co., Inc., and the American Mutual Liability Insurance Company of Boston, Mass., in solido, awarding Clarence J. Reid compensation at the rate of $30 per week for 400 weeks beginning March 2, 1931, with interest upon each past due instalment from its due date until paid; the whole payable in a lump sum and subject to a credit of $286.67; and for all costs.

As thus amended, the judgment appealed from is affirmed.

Amended and affirmed.