### CAGNOLATTI v. LEGION PANTS CO. et al.*
### No. 17066.

Court of Appeal of Louisiana. Orleans.
Feb. 6, 1939.

*Rehearing denied Feb. 27, 1939; writ of certiorari denied by Supreme Court April 3, 1939.

R. A. Dowling, of New Orleans, for appellant Cagnolatti.

Cyril Dumaine, of New Orleans, for intervenor appellant.

Eraste Vidrine and James G. Schillin, both of New Orleans, for appellees.

JANVIER, Judge.

Sidney Cagnolatti, a presser in a "pants" factory, seeks recovery in compensation, alleging that, on May 31, 1937, during the course of his employment, he sustained injury resulting from an accident which arose out of the employment and that there has resulted permanent total disability. He alleges that he is entitled to $13 per week for 400 weeks, but that he was in-duced to accept a "lump sum" settlement of $130 and to join with the said employer in executing a petition for authority to effect the said compromise and in obtaining the approval of the court thereto. He charges that the so-called compromise is null and void, first, because of alleged fraud and misrepresentation, and, second, because he avers that it really represents the discounting of a "lump sum" settlement at a rate greater than that permitted by law, and he avers that the compensation laws provide for a penalty of double the amount due where such "lump sum" settlement is discounted at a rate greater than 8 per cent.

The defendants are the employer, Legion Pants Company, a partnership, and the members thereof, and the Standard Accident Insurance Company of Detroit, Michigan, the liability insurance carrier of the said employer.

The Board of Administrators of Charity Hospital of Louisiana at New Orleans has intervened and alleged that it furnished to the said plaintiff drugs and medicines and X-rays, for which a total of $302 is due if there is liability in defendant, and, as authorized by the provisions of Act No. 126 of 1924, as amended by Act No. 29 of 1928, it prays for judgment against the said defendants, with 10 per cent. attorney's fees, legal interest, costs, etc.

The defendants aver that a valid and binding compromise has been effected, has received judicial approval, and has been recorded as required by the compensation laws and that, thus, the rights of plaintiff to make further claim are completely terminated. They specially deny that any fraud or misrepresentation was resorted to and assert that, at the time the compromise was entered into, there was grave doubt as to whether the accident arose out of the employment; also as to whether it arose during the course of the employ-ment and also concerning the extent and the duration of disability.

In the district court there was judgment for defendants and plaintiff has appealed, as has, also, the Board of Administrators of the Charity Hospital.

The question which we shall first consider is whether or not there was effected a compromise permissible under the compensation laws.

Counsel for plaintiff argues that, if the evidence convinces us that plaintiff's in-

juries have resulted in permanent total disability, then, since he would have been entitled, had there been no compromise, to compensation payments for 400 weeks at the rate of $13 per week, the payment of only $130 is, in effect, the making of a "lump sum" settlement and the discounting thereof at a greater rate than 8 per cent.

This argument is, obviously, based on a misunderstanding of the distinction between a compromise settlement and the commutation of weekly payments into a "lump sum" settlement. There is, in fact, only slight similarity between the two, as has been clearly shown in Musick v. Central Carbon Company, 166 La. 355, 117 So. 277, Young v. Glynn, 171 La. 371, 131 So. 51, and Reid v. J. P. Florio & Co., Inc., La.App., 172 So. 572.

Subsection 9 of Section 1 of Act No. 242 of 1928 (pages 357–362), amending Act No. 20 of 1914, Section 8, provides for the making of the "lump sum" payment, whereas Section 17 of Act No. 20 of 1914, as amended by Act No. 38 of 1918 (page 59), authorizes compromise settlements where there are questions in dispute and the parties, rather than submit these questions to judicial determination, agree upon a compromise settlement. The provisions of the Act of 1928 with reference to "lump sum" settlements are applicable where there are no issues in dispute, but the parties, instead of making, on the one hand, and accepting, on the other, weekly payments over a period of time, decide that it would be best to settle the entire matter at one time by making one payment. They may do so, but the employee may not be charged a greater rate of discount than 8 per cent.

On the other hand, the provisions of Section 17 of the compensation act, as amended by the Act of 1918, are applicable where there are in dispute questions as to whether the injury is compensable, or concerning the rate of compensation, or concerning the duration or extent of disability. Wherever there is such dispute, it is well settled that the parties may avoid submitting the matter to judicial determination by agreeing upon a compromise settlement.

We think it unnecessary to discuss the matter at further length since the Supreme Court, in both cases referred to—Musick v. Central Carbon Company and Young v. Glynn—and this court in Reid v. Florio & Company, have definitely recognized the established right of the parties to compromise amicably cases involving compensation where there are such disputes and in which cases the payments made in compromise were substantially less than the claimant would have received had the issues been submitted to the court and decided in favor of the claimant. We shall quote from those three cases.

In the Musick Case the Supreme Court stated that the legal question presented was as follows, 117 So. 280:

"Since the settlement made was effected at a lump sum, which when considered with reference to a rate of discount, if it be assumed that the deceased died as a result of the injuries received, greatly exceeds 8 per cent. per annum, the question arises whether the court had authority to authorize the settlement in the amount at which it was made."

And the court, referring to Section 17, which authorizes compromises, said:

"* * * But the subsection did not so operate as to prevent the parties at interest from effecting, with the approval of the court, under section 17 of the Act of 1918, an amicable and binding settlement of the claim for compensation, of the nature of a lump sum settlement, by way of compromise, under section 17 of the Act of 1918, where there existed ground for dispute, such, for instance, as where the employee was injured and later died, and the circumstances appeared such as to leave some doubt as to whether his death was a result of the injury, and the employer was asserting that it was not, although the amount of the settlement, had the employee's dependents brought suit and established that the injury was the cause of the death, would, when considered from the viewpoint of discount, have been at a greater rate than 8 per cent. per annum."

The case of Young v. Glynn approves the doctrine announced in the Musick Case.

In Reid v. Florio & Company we referred to the language of the Supreme Court in the Musick Case and said, 172 So. 575:

"* * * the opinion goes on to state that this subsection did not operate so as to preclude the parties at interest from effecting, with the approval of the court, under section 17 of the Act No. 20 of 1914 as amended by the Act No. 38 of

1918, an amicable and binding settlement of the claim for compensation in the nature of a lump-sum settlement by way of compromise 'where there existed ground for dispute, such, for instance, as where the employee was injured and later died, and the circumstances appeared such as to leave some doubt as to whether his death was a result of the injury, and the employer was asserting that it was not, although the amount of the settlement, had the employee's dependents brought suit and established that the injury was the cause of the death, would, when considered from the viewpoint of discount, have been at a greater rate than 8 per cent. per annum."

There can, then, be no doubt that, where there are issues in dispute, a compromise may be made even though the amount paid is less than the claimant would have received had those issues been judicially determined favorably to the said claimant.

It thus becomes necessary that we determine whether any fraud or misrepresentation was resorted to, and, if· not, whether there were any issues in dispute when the compromise settlement was made by the parties and approved by the court.

■ Plaintiff maintains that, due to his ignorance, he yielded to the persuasion of Mr. Bonck, who seems to have managed the Legion Pants Company. He maintains that Mr. Bonck told him that, though the employer had obtained insurance, the policy did not afford protection beyond ten weeks and that, therefore, in no event could he obtain more than the $130 offered since that amount represented ten weekly payments at $13 each, $13 being admittedly the amount of weekly payment to which he was entitled during the period of his disability.

But this charge is entirely unsupported and the record convinces us that no such statement was made and that the compromise was entered into without any fraud or misrepresentation. At any rate, the district judge so found even though he stated that he did not approve of the practice of entering into compromise agreements with claimants who have not recovered and who may, at the time, be in the hospital.

■ Defendants, in support of their contention that the compromise was justified because of the existence of· disputed issues, point to several questions, on each of which, they maintain, there was a dispute. First, they say that the accident did not occur in the course of employment, and, second, that it did not arise out of the employment, and they maintain that, on the contrary, Cagnolatti was on the premises solely because he wished to be there and not because he was required to remain, since there was no work for him to do. They also maintain that he was injured not as the result of doing anything connected with his work, but solely because he himself initiated a scuffle with a third person not an employee of the defendant, Legion Pants Company.

The record shows that Cagnolatti was employed on a piece work basis, being paid when there was work to be done and then according to the volume of work done by him. In other words, he was paid 93 cents per hundred for all "pants" pressed. It is averred by defendants that at the time of the accident—about 3:30 o'clock in the afternoon on a Monday—there was no work for the employee to do; that he had been told on the preceding Saturday that there would be no work on Monday since the other employees, who made "pants", would not have any ready for him to press, and that, therefore, there was no reason for him to come to the premises on Monday at all and certainly no reason for him to remain after being told that there was no work.

Cagnolatti, on the other hand, declares that he had been ordered to report for work on Monday morning and that, on so reporting, he had been told that there might be work in the afternoon; that he had been given carfare and lunch money and had left and had returned after lunch and been told to wait to see whether any work would develop and that, while he was so waiting, the accident occurred.

The evidence on this question—whether or not he had been told to wait or whether he was required to wait—is quite contradictory, and, were that question before us now, we would find it difficult to reach a conclusion. But that is not the question which we must decide, for, in determining whether there was room for· legitimate dispute, we do not have to go so far as to reach a conclusion as to what would have been the outcome of the dispute had the matter gone to trial. All that we are called upon to decide is whether there were reasonable grounds for dispute. If there were, then, a compromise was justified and authorized by law, and, since even after

reading all of the evidence we find the question doubtful, it is quite certain that there was a disputed issue and that, therefore, a compromise was authorized.

■ Plaintiff strenuously argues that, by the allegations of the joint petition which sought the approval of the compromise, the employer is estopped to contend that the employee was not on the premises because of his work. It is true that in that petition the employer did allege that the employee "reported for duty and was still in the premises" at the time of the accident and it is true, also, that, if this allegation stood alone, it would seem inconsistent for the employer to contend that the employee was not on the premises because of his work. But that allegation is followed immediately by others which fully explain it. It is stated in the joint petition, for instance, that the dispute arose because the employer contended that "there was no work for" Cagnolatti "to do, and he remained in the premises merely as a visitor or from a friendly interest in the business * * *". Surely the allegation that he reported for work, followed immediately by others to the effect that there was no work and that, therefore, he remained purely as a visitor, cannot be construed as an admission that he was there for the purpose of working, since it squarely put at issue the question of whether the accident arose in the course of the employment.

■ Counsel point to a memorandum which was sent by Bonck to Cagnolatti while he was in the hospital and in which memorandum Bonck made the following statement:

"You were paid your lunch and carfare to report to our factory to see if there was any work for you therefore you were on duty. Tell him the accident just as it happened. If we don't put over the idea that you were on duty we may not get anything. Tell him you do work and if there is no work you wait around until there is work. In other words try to put over the thought that you were waiting for work."

But Bonck explains that by stating that he was anxious to help Cagnolatti obtain compensation from the insurer and that, therefore, he did not state the true fact in that memorandum, but was merely instructing Cagnolatti as to what to say to the adjuster in order to obtain a compensation settlement. At any rate, this is merely an additional fact which could have been taken into consideration had it been necessary to determine whether the employee was or was not required to remain on the premises.

■ Then, too, there was plainly a serious issue concerning the nature of the accident. One Earl Rutter, a drayman who did hauling for the employer at a fixed price per package, and who, defendant contends, was not an employee of the establishment, engaged with claimant in a friendly scuffle. There is dispute as to whether he initiated the scuffle or not, but if he did so at a time when he was not required to be at work and while he was on the premises solely for his own pleasure or convenience, it might well have been held that the accident did not arise out of the employment. On this issue also, then, it appears that there was a serious dispute.

Furthermore, at the time settlement was made, there was also dispute as to the duration of the disability. There was some belief that plaintiff would be able to return to work shortly and others felt that he would be disabled for a very long time. Under such circumstances there was nothing in the law to prevent entering into a compromise agreement.

We therefore conclude that, when the settlement was made, there were serious issues of fact in dispute, and that plaintiff entered into a compromise knowing full well what he was doing.

The intervenor has not contended that it should be permitted to recover from defendants in any event, but has only prayed for judgment in the event we hold defendants liable to plaintiff.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.

WESTERFIELD, Judge.
I respectfully dissent.