### SELF v. WYATT LUMBER CO., Inc.

#### No. 5871.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Rehearing Denied April 28, 1939.

Writ of Certiorari and Review Denied
May 29, 1939.

J. S. Pickett, of Many, for appellant.

Wood & Wood, of Leesville, for appellee.

HAMITER, Judge.

Plaintiff was injured on the 28th day of February, 1933, while in the discharge of his duties as an employee of the defendant, Wyatt Lumber Company, Inc., at its mill in Gandy, Louisiana. Thereafter he received weekly compensation payments for his injuries, under the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, until January 9, 1937.

On the last named date the said employee and employer jointly presented to Judge William H. Ponder of the Eleventh Judicial District Court, in and for Sabine Parish, Louisiana, a petition in which they outlined a proposed lump sum settlement of the compensation claim and prayed for judicial approval of it. This approval was obtained under a signed formal judgment and the settlement was consummated between the parties.

The instant proceeding was instituted on January 10, 1938. In his original and supplemental petitions plaintiff alleges that he entered into the settlement "on account of threats and false inducements held out to him" by the defendant. He further avers that, "Your petitioner would further show that shortly before January 9th, 1937, he, your petitioner, was importuned and requested and solicited by agents and representatives of the Wyatt Lumber Company, Inc., to enter into a lump sum settlement with them by accepting the sum of $525.00 in full settlement of the amounts of compensation to which he was entitled by reason of the accident and injuries; that he was informed and led to believe, by the agents and representatives of the Wyatt Lumber Company, Inc., that his injuries and disability were of a temporary nature and that within a short time he would be able to resume his daily work; that the Wyatt Lumber Company, Inc., had full knowledge, acquired from their own doctors and physicians, that he, your petitioner, was totally and permanently disabled, and that he, your petitioner, did not have such knowledge."

The prayer is that the "purported lump sum settlement" be set aside and that he be awarded compensation as for total and permanent disability, together with medical expenses and the statutory penalty, less the sums previously given to him; and that such be paid in a lump sum.

The several exceptions and pleas filed by defendant were overruled.

Defendant denies generally the allegations of the petitions and affirmatively shows that the settlement agreement was entered into after persistent importuning by plaintiff to do so.

Judgment was rendered in favor of plaintiff in accordance with his prayer. Defendant appealed.

Appellant reurges here the exceptions and pleas overruled by the trial court. Additionally, it pleads the prescription of one year in bar of plaintiff's demands. Our holding on the merits of the case makes unnecessary a decision on any of those filings.

The aforementioned joint petition proposing the attacked settlement contains the following pertinent averments:

"Petitioner, Peyton Self, further shows, that he was treated for the aforesaid injury, by a physician employed by the Wyatt Lumber Company, Inc., and was discharged by said physician in charge of his treatment, about two years ago; that he has been paid compensation as provided under the Workmen's Compensation Laws of Louisiana, from the time of the accident, up to and including the 9th day of January, 1937.

\* \* \* \* \* \* \*

"Petitioner, Peyton Self, contends that he was totally incapacitated from the time of said accident and is permanently and totally disabled to do any work of any reasonable character, and that he is entitled to compensation, at the rate of $6.43 per week, for a period of 400 weeks, beginning February 28th, 1933.

"Petitioner, the Wyatt Lumber Co., Inc., contends that petitioner Peyton Self, was discharged by the physician in charge of the said Peyton Self more than two years ago, and that the said Peyton Self has substantially, if not wholly recovered from any incapacity which he may have suffered, as a result of said accident.

"That a difference exists between the said Wyatt Lumber Co., Inc., and the said Peyton Self, as to whether or not there is liability by the said employer to the said employee, on account of, or resulting from the accident claimed by the said employee, Peyton Self, and that in order to settle the difference between themselves, they desire to compromise and settle in full, any and all claims that the said Peyton Self has, or may have, against the said Wyatt Lumber Co., Inc., and petitioner Peyton Self, hereby agrees to release any and all rights and claims, which he has or may have, against the said Wyatt Lumber Co., Inc., for and in consideration of the payment to him of the sum of $525.00 to be paid as follows: $400.00 cash, $100.00 in lumber, and $25.00 in trade, from the general store of petitioner, the Wyatt Lumber Co., Inc., together with house rent for four months from date hereof in addition to the payments heretofore made to petitioner, Peyton Self, by the Wyatt Lumber Company, Inc.; and that he believes this to be a fair and reasonable settlement, and that this lump sum settlement is not a discount of more than 8% of the balance due him, because of said injury,

under the Workmen's Compensation Law of Louisiana, and covers in full, his disability presently existing."

Plaintiff personally appeared before the district judge when the petition was presented. The judgment signed by that official decreed "that the compromise settlement proposed in the above and foregoing petition be and the same hereby is approved and the parties are authorized to complete their agreement by carrying the same into effect." The recited and ágreed consideration, which equalled approximately 80 additional weekly compensation payments, was thereafter paid to and accepted by plaintiff and he executed a written receipt therefor.

■ Two classes of lump sum settlements of compensation claims are provided for in the Louisiana Employer's Liability Act. The provisions of subsection 9 of section 8 of the statute, Act No. 242 of 1928, p. 362, are applicable where there is no room for dispute between the employer and employee regarding any material facts connected with or surrounding the compensation claim. If, however, substantial and genuine disagreement exists between the parties relative thereto, a lump sum settlement by way of compromise is authorized by section 17, Act No. 38 of 1918, p. 59. Musick v. Central Carbon Co., 166 La. 355, 117 So. 277; Guillot v. Louisiana Ry. & Nav. Co., 166 La. 467, 117 So. 558; Young v. Glynn, 171 La. 371, 131 So. 51; Horney v. Scott, La.App., 171 So. 172; Calhoun v. Louisiana Delta Hardwood Lbr. Co., La.App., 182 So. 362.

■ In the absence of fraud, ill practice or misrepresentation, settlements made under and in compliance with the provisions of the above referred to sections are forever valid and binding on the parties. Horney v. Scott, supra.

■ A judgment approving a lump sum settlement, when rendered in a competent court of this state and in a proceedings and manner authorized by our laws is presumed to be valid. Calhoun v. Louisiana Delta Hardwood Lbr. Co., supra.

■ In the instant case the record is convincing that plaintiff and defendant were not in agreement with reference to the extent of the injuries. As stated in the joint petition, the employee claimed total and permanent disability, while the employer contended that he had "substantially, if not wholly, recovered from any incapacity which he may have suffered as a result of

said accident," and the belief of defendant that the incapacity had ceased appears to have been genuine. Mr. Homer Murphy, with whom plaintiff consulted regarding the settlement, became connected with the mill in question on or about December 12, 1936. He familiarized himself with the work there until January 1, 1937, at which time he assumed the mill's management. This business capacity endured until the month of April, 1937. He was not in defendant's employ at the time of the trial of this case. It is his testimony that he observed plaintiff, for the purpose of determining the extent of the latter's injuries, for several weeks prior to the consummation of the settlement that occurred on January 9, 1937. When questioned regarding his observations, he stated: "Well, Peyton could get around pretty good until he got around where he knew I was present and watching him. I remember one occasion in particular that he came out of the American Cafe, and Peyton almost ran over me and had both crutches in one hand, and was in a big hurry going some place, down on that street running in front of the American, and he almost bumped into me, and I stopped and talked to him, and when he walked off he was on both crutches and getting along very feebly."

Mr. Murphy further testified that following the settlement and before he left the mill, plaintiff worked several days at the task of hooking tongs in the ends of logs; that a person must be alert and active to perform work of that character; that this employment terminated because he discharged the employee for drinking intoxicating liquors contrary to company regulations; and that plaintiff informed him of his ability to work at that time.

In view of the existence of the discussed disagreement, we hold that the compromise settlement was authorized by and properly confected pursuant to the provisions of section 17 of the compensation statute.

■ Next to be considered is plaintiff's charge that he entered into the agreement because of fraud and false inducements on the part of defendant. If his allegations in this regard are supported by the evidence in the record, he is entitled to the relief sought; if otherwise, the judicially approved compromise settlement is a bar to his demands. The assailed judgment is presumably valid and the burden of proving the alleged fraud is with plaintiff.

In our opinion plaintiff has failed to discharge the burden which he carries. The testimony given by him in substantiation of his allegations of fraud is uncorroborated, while he is contradicted by Dr. C. C. Self, defendant's physician for a number of years, and by Mr. Homer Murphy, who is above referred to. Neither of the two last named persons was in any manner associated with defendant when the case was tried. Dr. Self testified that plaintiff initiated the proposal for the settlement and sought his aid in securing it on numerous occasions. He was first approached approximately eighteen months before the compromise was effected. Finally, plaintiff came to him and stated a desire to erect a building and suggested that funds and lumber be furnished in settlement of the claim. Thereupon, he, Dr. Self, spoke to defendant's manager in behalf of the employee.

It is the testimony of Mr. Murphy, the then manager, that the matter was brought to his attention several times by Dr. Self. After this he had a talk with plaintiff who submitted the proposition that, " * * * he wanted four hundred dollars in cash and about one hundred dollars in lumber, or about enough to build him a little place of business out on his father's place, and four hundred dollars in cash so that he might stock it with merchandise, and he wanted twenty-five dollars in merchandise at the commissary at the mill, and we were to let him continue to live in the company house there for a period of three months without rent. He had been living there without paying any rent—we had not been charging him any rent since he had been on compensation, and he was to have three months in which to get his house built and get out."

No action was immediately taken. The employee made other visits to him before his proposition was accepted.

The attorney who cared for the legal proceedings was informed of the agreement by plaintiff and Mr. Murphy. After the necessary pleadings were prepared, the proposal was explained to plaintiff and the joint petition signed.

Appearance before Judge Ponder was then made and to the best of the attorney's recollection the employee was there questioned as to whether or not the settlement was satisfactory and was freely and voluntarily made.

The record does not disclose that fraud in any form was perpetrated in connection

with the consummation of the settlement, and the judicially approved agreement of the parties must stand.

Accordingly, the judgment of the district court is reversed and set aside and plaintiff's demands are rejected at his cost.