# WEAVER v. MUTUAL BUILDING & HOMESTEAD ASS'N.

## No. 17076.

Court of Appeal of Louisiana.   Orleans.

April 22, 1940.

Rehearing Denied May 20, 1940.
Writ of Certiorari Denied July 18, 1940.

Katz & Amato, of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, for appellees.

JANVIER, Judge.

Paul Weaver, a slater, seeks recovery in compensation from Mutual Building and Homestead Association, averring that, on December 5, 1935, he sustained physical injuries while at work on the roof of a building owned by that corporation. He claims that, as a result, he has been permanently totally disabled.

In his original petition he alleges that he is entitled to $14.41 per week for four hundred weeks, but that, through misrepresentation amounting to fraud, he was induced to accept $150 in full settlement and that he joined with the said association in obtaining a judgment approving the said settlement.

He further charges that the compromise is "unconscionable and inequitable" and he prays that the said settlement be set aside and that he be awarded judgment for the amount to which he is entitled.

By supplemental petition he avers that in his original petition he miscalculated the amount to which he should have been entitled and that the correct amount should be $15.60 per week and he also alleges that the so-called compromise was, in truth and in fact, not a compromise at all, but amounted to the commuting of weekly payments into a lump sum and the discounting thereof at a rate of interest greater than 8 per cent., and he avers, therefore, that he is entitled to a penalty of 50 per cent. of the amount due, as provided by the compensation laws where a lump sum settlement is so discounted at a rate greater than is permissible.

To these petitions defendant filed an exception of no right or cause of action, which was overruled. Defendant then filed answer in which it reserved all rights under the exception and asserted that the compromise agreement had been lawfully entered into, without fraud or misrepresentation, and that it had been duly approved by the district court, in effect admitting that Weaver had sustained certain injuries, and asserting that he had not been employed by defendant but was, in fact, an employee of his father, Harold Weaver, who, as an independent contractor, had been engaged by defendant to make repairs to the roof of a building belonging to defendant, and that it, defendant—the said association—"is not engaged in the business or occupation of contracting for or of repairing houses or the roofs of houses" and that it "in no way supervises the work or has any connection with it other than the making of a contract for such repairs with an independent contractor; * * *".

Defendant thus raises the contention that, even if the compromise should be set aside, there would be no liability to plaintiff in compensation since it is not engaged in the trade, business, or occupation of building or repairing houses, or in any other occupation within the coverage of the compensation laws.

After a trial there was judgment dismissing the suit and plaintiff has appealed.

Defendant maintains in this court that the matter should have been decided on the exception of no cause of action and we, therefore, first consider the petitions to determine whether those exceptions should have been sustained.

Defendant contends that the charges contained in plaintiff's petition with reference to the facts, from which it is asserted that there was misrepresentation and fraud, are so vague, general and indefinite that they consist of general conclusions only and that, therefore, the exceptions should be sustained because of the absence of any allegation which would warrant the introduction of evidence. And it is also contended that the petition itself shows that the defendant is not engaged in and, at the time of the accident, was not engaged in any hazardous occupation contemplated by the compensation act, and that, therefore, under no circumstances could it be held liable in compensation to plaintiff even if it be conceded that all of the allegations of plaintiff's petition are true.

The first contention—that there are no specific charges of misrepresentation—is not well founded, for, though it is true that most of the charges are neither detailed nor specific and, therefore, may be said to be mere conclusions, we do find at least one which may be characterized as specific and as alleging a fact which, if

true, might be construed as a misrepresentation. It is alleged that plaintiff was told that, regardless of the extent of his injuries, even if defendant should be held to be liable, his recovery would be limited to a maximum amount of $300. Of course, this was not true, and, if such a statement was made and the circumstances under which it was made should justify the conclusion that it amounted to misrepresentation, it might be that we would be justified in setting aside the compromise induced thereby. For this reason and also because we would hesitate to dismiss a suit for compensation for mere insufficiency of allegation, we conclude that this contention is not well founded, and we proceed to a study of the more involved legal question which is presented by the other contention —that the petition itself affirmatively shows that defendant corporation was not engaged in one of the hazardous occupations contemplated by the act and therefore could not be liable in compensation to the employees of an independent contractor.

Defendant maintains that building and loan associations are not engaged in the repairing of buildings and are only permitted to do such work as an incident to the principal purpose for which they are organized; that they may, of course, acquire buildings, and that when they do so they must have, as all owners have, the right to make repairs to those buildings, but that, even when they do so, they do not make themselves liable in compensation to those who may be employed in the repair work, and that, since they are not engaged in such business, section 6 of the workmen's compensation statute has no application to them and does not make them liable to employees of independent contractors.

■ It is elemental, of course, that, in order that there be liability in compensation, not only must it be shown that the employee was engaged in the trade, business or occupation of the employer, but that it must also appear that the employer was engaged in one of those occupations contemplated by the compensation statute, Act No. 20 of 1914, as amended, and it is because of this principle that the Supreme Court, in Shipp v. Bordelon, 152 La. 795, 94 So. 399, 400, held the defendant not liable in compensation although the injured employee was hurt while engaged in repairing buildings, which is a hazardous employment. The court found that the defendant was not engaged in the business of

building or repairing buildings and that such repair work as he found it necessary to undertake was merely incidental to his ownership of certain buildings. The court said: "We agree with counsel that it is not required, under our law, that the business of the employer must be exclusive, for one may have a dozen trades, businesses, or occupations. But, to become liable for compensation, he must be actually so engaged, as a trade, etc., and it is not enough that the work done should be hazardous if it be not also incident to or in the course of the trade, business, or occupation of the employer which is within itself hazardous under the statute."

■ Following this principle, when we came to consider the question in White v. Equitable Real Estate Company, Ltd., 18 La.App. 714, 139 So. 45, 46, we said: " * * * True enough, incidental to the owning and renting of improved realty is the making of repairs, and true it is, also, that one who makes those repairs is engaged in a hazardous occupation, but it is not enough that the employee be engaged in such employment. It is also necessary that the trade, business, or occupation of the employer himself be hazardous."

This principle is also recognized in the following cases: Blane v. Iglehart, 5 La. App. 17; Jarrell v. Ewing, 7 La.App. 502; Ham v. Domill Construction Company et al., 8 La.App. 797; Lay v. Pugh, et al., 9 La.App. 183, 119 So. 456; Charity Hospital of Louisiana v. Morgan, La.App., 143 So. 508; De Lony v. Lane et al., La.App., 155 So. 476; Gerstmayr v. Kolb, La.App., 158 So. 647.

The situation is different where the owner is engaged in the business of building and repairing, whether that be his only business, or whether he be engaged in it in addition to his regular, or principal, occupation. It was therefore recognized, in Clementine v. Ritchie, 1 La.App. 296, that, where a defendant, whatever may be his principal business, engages in the business of constructing or repairing houses, he is liable in compensation to employees injured in that work and he is liable under section 6 of the compensation statute to employees of contractors who may be undertaking to do for him the work contemplated by that business. In that case we said that defendant, although an architect, was engaged in the additional business of building or constructing houses.

■ Counsel for defendant argue that under no circumstances should a building and loan association be held liable in compensation to one who is engaged in repair work, even if employed by the said association, for the reason that such building and loan associations are not incorporated for the purpose of doing such work except in connection with their own buildings and cannot engage therein since such acts would be "ultra vires". We think that it was not contemplated by our lawmakers that such associations should engage in the repairing or constructing of buildings as an occupation separate from that of making loans to members and that, in framing Section 1 of Act 140 of 1932 and Section 50 of the same act, in which such associations are given the right to build, improve and repair buildings, the lawmakers did not intend to grant the right to such associations to undertake to make repairs or to construct buildings for profit unless, in either case, in connection with a loan, or in connection with property which they, the said associations, might have been forced to acquire.

Counsel for plaintiff, maintaining that any such association may engage in such trade, business or occupation, point to the case of Wood v. Peoples Homestead & Savings Association, 177 So. 466, as a well considered decision, in which the Court of Appeal for the Second Circuit held that a homestead association may be held liable for injuries sustained when it is engaged in the building, construction and repairing of property.

Counsel for defendant, however, point to another decision of the same court, McAllister v. Peoples Homestead & Savings Association, 171 So. 130, 131, and maintain that the better view is expressed there to the effect that a homestead association which repairs property which it itself owns is not engaged in an occupation which is within the contemplation of the statute. There the same court said: "The mere fact that it [the homestead association] repaired its own buildings is not sufficient. One who rents property is not engaged in a hazardous business. In order to rent property it necessarily must be kept in a state of repair. What difference does it make whether there is one house to rent or several hundred? We think there is no difference."

It is true that in the later case our brothers of the Second Circuit said that, if the facts should show a building and loan association to be actually engaged in building, or construction, or repair work for others, it would be proper to hold such association liable in compensation to those engaged in such work. We think, as we have said, that it was not contemplated by the framers of homestead association laws that these associations should be authorized to engage in repair and construction work for others, except in connection with the principal business of making loans to members, and that, accordingly, should such an association persistently engage in such an ultra vires undertaking, those at interest, by proper proceedings, might be able to put an end to such ventures, but we feel that, should such association undertake such repair work for others and engage employees to make such repairs, they should be liable for injuries sustained by those employees and should not be permitted to escape this liability in compensation by relying upon the fact that they have no legal right to engage in such occupations. Therefore, even though the association here may have no legal right to engage in the repairing of buildings as a separate occupation, nevertheless, should it actually do so, it should be liable in compensation to employees undertaking the work. It would necessarily follow that, should such an association establish the practice of undertaking such work as a trade, business, or occupation, and then contract with an independent contractor to do such work, it would, under section 6 of the compensation act, retain liability to the employees of the independent contractor.

■ It is possible that the allegations of plaintiff's petition may be construed as charging that the homestead association had established the practice of engaging in such a trade. It is true, we would have to strain our imaginations somewhat to so interpret the petition. Nevertheless, we should endeavor to interpret it as liberally as possible in favor of the plaintiff in a compensation suit and we should endeavor to hold that it does state a cause of action if it is reasonably possible to so construe it, and, if such a charge is made and proven, then there may be liability in compensation. Thus, the exceptions based on this contention should be and were properly overruled.

■ But when we consider the question of whether the compromise should be held to be binding, we find that the plaintiff has utterly failed to show any fact which to

any extent resembles fraud or misrepresentation. As a matter of fact, his own testimony negatives the suggestion of fraud. He states that he was advised by his father to accept the compromise. It appears that the compromise was not offered to him until many days after the accident and that there was no undue persuasion of any kind resorted to. In fact, it is shown that the attorney who made the compromise explained to him carefully and in detail what his rights were and that he nevertheless insisted that he desired to accept the amount offered.

There is, then, only one question left for consideration—that is, whether or not at the time the compromise was made, there was any disputed question which would make it possible to make a compromise within the contemplation of the compensation act. For, of course, if there is no disputed question, then there may be no settlement under the guise of a compromise, for such would amount to the commuting of a lump sum settlement at an excessive rate of interest. But, on the other hand, there is no doubt of the right to compromise where there is in dispute any question as to whether the injury is compensable, or concerning the right to compensation, or regarding the duration or extent of disability. For a discussion of the distinction between a lump sum settlement and a compromise, see Cagnolatti v. Legion Pants Company, La.App., 186 So. 377. The right to compromise is recognized in Section 7 of the statute (Act 20 of 1914, as amended by Act 38 of 1918). See Musick v. Central Carbon Company, Inc., 166 La. 355, 117 So. 277; Young v. Glynn, 171 La. 371, 131 So. 51; Reid v. J. P. Florio & Company, Inc. et al., La.App., 172 So. 572; Cagnolatti v. Legion Pants Company et al., supra. And here there is no doubt that there was room for a bona fide dispute concerning the question of whether the homestead association was liable at all in compensation. This question was obviously presented and, had it been submitted for judicial determination, there was a reasonable possibility, if not a grave danger, that plaintiff might have been denied any recovery at all, for it might well have been held that the defendant association had not engaged in any undertaking contemplated by the compensation laws and that, therefore, it could not be held liable in compensation either to its own employees, or, under Section 6, to employees of an independent contractor. Since there was not only room for such a dispute, but, in fact, such a dispute actually existed, there was nothing to prevent the making of a compromise.

The case in no sense involves the discounting of a lump sum settlement at a prohibited rate of interest. No reason being shown to set aside the compromise, it is ordered, adjudged and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.

Affirmed.