**FORRESTAL v. McCRAY REFRIGERATOR SALES CORPORATION et al.**

No. 17339.

Court of Appeal of Louisiana. Orleans.

June 4, 1940.

Rehearing Denied June 13, 1940.

Writ of Certiorari Denied July 18, 1940.

John T. Charbonnet, of New Orleans, for appellant.

Wm. H. McClendon, Jr., of New Orleans, for appellees.

McCALEB, Judge.

John Joseph Forrestal, a mechanic's helper, brought this suit for the recovery of 400 weeks compensation at $11.70 per week together with certain penalties imposed by law against his alleged employers, McCray Refrigerator Company and Floyd Samuel Schmachtenberger. His demand was dismissed in the trial court and he has prosecuted this appeal from the adverse judgment.

The record discloses certain facts which we find to be as follows: The defendant Schmachtenberger conducts his business in the City of New Orleans and is engaged in selling for the account of the McCray Refrigerator Company, a foreign corporation, ice boxes, refrigerating units and other equipment which he undertakes to install and service for the purchaser. In pursuit of his occupation, he employs salesmen, mechanics and mechanics' helpers.

On February 10, 1938, Schmachtenberger sold for the account of McCray Refrigerator Company a certain refrigeration unit with compressor to one Joe Wesley Randall of Hammond, Louisiana. The refrigerator was shipped by the Mc-Cray Company from its factory in Indiana to Mr. Randall and it arrived in Hammond on or before March 1, 1938. After its arrival, it became the duty of Schmachtenberger, under his contract with McCray Refrigerator Company, to have it installed in Mr. Randall's residence. Accordingly, he instructed his mechanic, one Jim Rolphton, who was in his regular employ at $35 per week, to go to Hammond and perform the necessary installation work. Rolphton needed someone to assist him in the performance of the job and he employed the plaintiff for the day of March 1, 1938, as his helper. The plaintiff had been employed before by Rolphton on several other occasions to perform similar work. There had never been any previous understanding between plaintiff and Rolphton or between plaintiff and Schmachtenberger on those occasions, nor was there any agreement made on the day with which we are now concerned, as to what his daily or hourly compensation would be for the services he would render. Plaintiff was merely told by Rolphton to meet him on

the morning of March 1, 1938, at Schmachtenberger's office. Pursuant to these instructions, plaintiff met Rolphton and they went to Hammond and performed the job. When they returned to Schmachtenberger's office in New Orleans, Rolphton had plaintiff assist him in removing a refrigerator from the truck in which they had made the trip, and it was while in the act of removing this refrigerator that plaintiff received an injury to his left arm.

Immediately after the accident, Rolphton took the plaintiff to the Charity Hospital for treatment. His injury was diagnosed at that institution to be a chip fracture of the lateral epicondyle of the humerus or, in other words, a chip fracture of the bone at the elbow of the left arm. After plaintiff's injured arm had been placed in a splint on the night of the accident by the doctors at the hospital, he was taken to his home by Rolphton. When they arrived at plaintiff's home, Rolphton gave plaintiff $1 and stated that he would advance that amount to him as he (plaintiff) would probably need it.

On the day after the accident, plaintiff went to Schmachtenberger's office for the purpose of ascertaining the amount of compensation which would be payable to him for his injury. A number of conferences were had between them, and finally, upon advice of Schmachtenberger's attorney, it was agreed that they would settle their differences by a lump-sum payment to plaintiff of $39, which was based upon a calculated disability of five weeks at the rate of $7.80 per week. On March 9, 1938, in compliance with this understanding, plaintiff and Schmachtenberger signed a joint petition, which was addressed to the Civil District Court for the Parish of Orleans, wherein they expressed their willingness and desire to finally adjust and settle the matter of plaintiff's compensation. This joint petition was approved by the Judge of Division C of the Court and judgment was entered in accordance with the prayer of the parties.

In the present suit, the plaintiff alleges that the agreement of compromise, which has been approved by the court, is, in truth and in fact, not a compromise but a lump-sum settlement which has been discounted by the defendant Schmachtenberger at a rate of interest exceeding eight per cent. per annum in violation of Subsection 9 of Section 1 of Act No. 242 of 1928, p. 362, which amended Section 8 of Act No. 20 of 1914 (State Workmen's Compensation Law). He asserts that he was induced to enter into the agreement upon a representation by Schmachtenberger. that the physicians at the Charity Hospital, who had treated him, had voiced the opinion that he would be disabled for a period of time not exceeding five weeks; that this representation was untrue and was known by Schmachtenberger to be false at the time he made it; that, as a matter of fact, he did not recover from his injury within five weeks but that, on the contrary, he has been disabled ever since the date of the accident and that he is advised by his physicians that he is permanently incapacitated to do any work of a reasonable character.

He further avers that, apart from the fraudulent misrepresentations on the part of Schmachtenberger, the so-called compromise is void and should be annulled because there was never at any time a serious dispute between the parties with reference as to whether his injuries were compensable or as to the rate of his compensation or as to the duration of his disability and that, in truth, the so-called compromise is nothing more than a lump-sum settlement which should be invalidated because the payment to him has been discounted at a greater rate of interest than eight per cent. per annum.

The plaintiff has joined McCray Refrigerator Company as a party defendant to the action and seeks to hold that company liable as his employer in solido with Schmachtenberger. He asserts that Schmachtenberger is not, in contemplation of law, a distributor of the products of the McCray Company, but that, on the contrary, the relationship existing between Schmachtenberger and McCray Refrigerator Company is that of principal and agent and that he was, at the time of the accident, an employee of the McCray Refrigerator Company, having been hired by Schmachtenberger as its agent.

In his answer, Schmachtenberger admits the employment of plaintiff; that plaintiff was injured in the course of his employment and that he was liable to him for compensation. He maintains, however, that his responsibility for plaintiff's injury has been fully discharged; that the compromise agreement, which has been approved by the court, is valid and that, at the time the agreement was made, there was a serious dispute existing between the

plaintiff and himself concerning the rate of plaintiff's pay and the extent of plaintiff's disability. He denies the plaintiff's charge that he practiced any deception or took an unfair advantage of plaintiff, and asserts that the plaintiff fully understood the import of the agreement and was well acquainted with all of the allegations of fact contained therein.

The McCray Refrigerator Company likewise resists plaintiff's action, maintaining (1) that his claim is prescribed because the suit was not filed within one year from the date of the accident; (2) that the plaintiff was at no time in its employ and (3) that it has no interest or connection with the compromise agreement entered into between plaintiff and his employer Schmachtenberger which is sought to be set aside.

The primary question presented for our decision relates to the validity of the compromise settlement because, if we conclude, as did the district judge, that plaintiff's attack upon this settlement has not been sustained by proof, it will not be necessary to determine whether the relationship between Schmachtenberger and the McCray Refrigerator Company is that of principal and agent as contended for by plaintiff, or whether, as asserted by the defendants, Schmachtenberger is an independent distributor engaged in business for himself in the sale of the products of McCray Company, in this State.

The agreement between the plaintiff and Schmachtenberger, which was approved by judgment of court, reads as follows:

"To the Honorable the Civil District Court for the Parish of Orleans, State of Louisiana:

"The joint petition of John Forstall, of age and a resident of New Orleans, Louisiana, and of F. S. Schmachtenberger, of age and a resident of New Orleans, Louisiana, with respect represents:

"1. That F. S. Schmachtenberger is engaged in the business of selling commercial refrigerators.

"2. That in connection with said business he employed John Forstall to act as a helper in moving certain refrigerators, his employment being for one day only at two and no/100 ($2.00) Dollars per day and never more than one day per week.

"3. That on March 1st, 1938, the said John Forstall was employed to work that day for the sum of two and no/100 ($2.00) Dollars and while so employed and assist-

ing in unloading a truck the said employee fell and injured his left elbow and his doctors have estimated that he will be unable to work for a period of five weeks.

"That there is a dispute between the employer and employee.

"First, as to whether the employer is engaged in a hazardous business and amenable to the compensation law. Second, as to whether the weekly wage of the employee was two and no/100 ($2.00) Dollars or Twelve and no/100 ($12.00) Dollars. Third, as to whether the employee will be disabled beyond the period of five weeks estimated by the physicians who attended him.

"4. That to compromise and settle the several disputes the parties have agreed that it would be to their best interest for the employer to pay and employee to accept compensation at the weekly rate of 65% of Twelve and no/100 ($12.00) Dollars for a period of five weeks beyond March 1st, 1938, or the sum of Thirty nine and no/100 ($39.00) Dollars, cash, in full and final settlement of all his rights, damages, claims and actions arising out of and/or resulting from the said accident, under the Compensation Law of Louisiana in equity and under all laws whatsoever.

"5. That in the opinion of petitioners the said compromise settlement is to the advantage of all parties and should be approved by this Honorable Court, and that said employer should be authorized to pay, and the said employee should be authorized to accept the sum of Thirty-nine and no/100 ($39.00) Dollars, cash, in full compromise settlement of all rights, claims, damages and actions which the said employee might have or which might accrue to him as the result of the said accident under the Workmen's Compensation Law of Louisiana, in equity and under all laws whatsoever, and the said employee should be authorized to sign and execute the receipt and release in the premises.

"Wherefore, petitioners pray that this Honorable Court will approve the settlement proposed in the above and foregoing petition, and will authorize the payment of the sum Thirty-nine and no/100 ($39.00) Dollars, cash, in a lump-sum by F. S. Schmachtenberger and the acceptance of the same by John Forstall, as a full and final compromise settlement of all the rights, claims, damages and actions which the said John Forstall might have or which might accrue to him as a result of the ac-

cident under the Workmen's Compensation Law of Louisiana, in equity and under all laws whatsoever against the said F. S. Schmachtenberger and/or his insurance company, and the giving of the receipt and release by the said John Forstall as hereinabove set forth.

"Petitioners further pray for all general and equitable relief.

"Signed John Forstall
"Signed F. S. Schmachtenberger"

Plaintiff contends that the foregoing agreement should be avoided and set aside on the following grounds: (1) Because it was procured as a result of the misrepresentations of the defendant Schmachtenberger; (2) that the dispute between the parties as alleged in the joint petition did not exist and that there was no dispute whatsoever at the time the settlement was made.

With reference to the first ground of attack, plaintiff maintains that he only agreed to sign the petition for a settlement upon Schmachtenberger's assurance that his disability would not last longer than five weeks; that he was told by Schmachtenberger that he (Schmachtenberger) had communicated with the doctors who treated him at the Charity Hospital and that they had informed Schmachtenberger that plaintiff would be well within that time.

The evidence contained in the record does not sustain this point. On the contrary, a careful examination of plaintiff's testimony and that of Schmachtenberger has convinced us that Schmachtenberger did not at any time make any misrepresentation to plaintiff; that, in making the settlement, both parties were at all times acting in perfect good faith and that neither sought to take an unfair advantage of the other. It is clearly shown by the evidence of Mr. Wm. H. McClendon, Jr., the attorney at law who prepared the joint petition of compromise, that he explained to plaintiff the nature of the agreement; that plaintiff appeared to be fairly intelligent; that he fully understood, when he signed the joint petition, that it was binding upon him and that he would be precluded from thereafter seeking further compensation in the event his disability extended for a greater period than five weeks.

This is not a case where an employer has sought out the injured employee shortly after the occurrence of the accident and made representations to him in order to obtain a quick adjustment of his responsibility. Here, plaintiff's evidence discloses that, on the day after he met with the accident, he went to Schmachtenberger's office for the specific purpose of getting compensation, and it is further shown that he visited the office each day thereafter until he was successful in obtaining a full settlement of his claim. When the plaintiff went to Schmachtenberger, the latter properly consulted his attorney for the purpose of being advised as to his liability and he also went to the Charity Hospital to acquire some knowledge as to the nature and extent of plaintiff's injuries. When he visited the Charity Hospital, he was shown the hospital record which describes plaintiff's injury to be a chip fracture of the bone of the elbow of the left arm. This record is not such as to cause anyone to believe that the injury described therein is of a serious nature. Add to this the fact that plaintiff was not confined to the bed or house and it is readily understandable that Schmachtenberger was impressed with the belief, as was the plaintiff, that the latter's disability would continue for only a short space of time.

Being of the opinion that plaintiff's charges of fraud are without foundation, we next consider whether there was a valuable consideration supporting the settlement approved by the court. The jurisprudence of this State is well established that, in order to consummate a valid compromise under the provisions of Section 17 of the Workmen's Compensation Law, there must be a genuine dispute between the parties (1) as to whether the injury is compensable, or (2) as to the rate of compensation or (3) as to the duration of the injured employee's disability. See Musick v. Central Carbon Co., 166 La. 355, 117 So. 277; Young v. Glynn, 171 La. 371, 131 So. 51; Reid v. J. P. Florio & Co., La.App., 172 So. 572; Young v. A. Marx & Son, La. App., 189 So. 167; Cagnolatti v. Legion Pants Co., La.App., 186 So. 377; and Weaver v. Mutual Building & Loan Ass'n, La.App., 195 So. 384.

The joint petition for approval of the compromise sets forth that there is a dispute existing between the parties (1) as to whether the employer is engaged in a hazardous business; (2) as to whether the weekly wage of the employee is $2 or $12 and (3) as to whether the employee will be disabled beyond the period of five

weeks as estimated by the physicians who attended him.

Counsel for plaintiff argues that none of the foregoing allegations are based upon fact and that no dispute as averred actually existed.

The evidence shows that there was never any disagreement between the parties concerning the question of whether Schmachtenberger was engaged in a hazardous business, and it therefore follows that the agreement cannot be maintained as a compromise on that score.

■ The allegation relating to a dispute existing as to whether plaintiff's weekly wages were $2 or $12 is not borne out by the evidence. We find, however, that the proof nevertheless shows that there was a bona fide disagreement between the parties as to the daily rate of the plaintiff's pay and that this dispute is wholly sufficient to maintain the validity of the compromise.

Plaintiff testified that it was understood between Schmachtenberger, Rolphton and himself that he was to receive, in compensation for his services, 50 cents for each hour that he worked and that on the day he was injured he performed six hours of labor and was therefore entitled to $3, which he was paid.

On the other hand, Schmachtenberger states that, while plaintiff contended after the occurrence of the accident that his compensation was based upon the rate of 50 cents per working hour, he at all times maintained that the basis of plaintiff's pay was $2 for each day that he worked; that he had worked for him for $2 per day on a number of previous occasions; that, when plaintiff was hired by Rolphton, he was under the belief that plaintiff would accept the same daily wage as had been paid to him in the past and that, when Rolphton advanced to plaintiff the extra dollar on the night of the accident, it was given as a gratuity on account of the fact that plaintiff had been hurt.

Rolphton's statement does not fully corroborate Schmachtenberger's contention. When asked to explain why he paid plaintiff $3 for his work and how he arrived at that figure, Rolphton replied: "At what? I wouldn't hardly know how to answer that. We—Mr. Forrestal was not regularly employed at that time."

But, notwithstanding the evidence of Rolphton, we are convinced that Schmachtenberger had reasonable ground to believe that plaintiff had been employed on a daily basis of $2 and we think that his contention on this point was warranted in view of the arrangement between the parties in the past. Thus, we see that a genuine dispute existed between the plaintiff and Schmachtenberger at the time they held conferences looking towards an amicable settlement of the case. This in itself was sufficient to support the validity of a compromise.

■ But, in addition to the foregoing, we find that the evidence also justifies the conclusion that there was room for a serious disagreement between the parties as to the duration of plaintiff's disability. After plaintiff was injured, he did not know how long he would be disabled. He says that Dr. Campbell, the interne who treated him at Charity Hospital, told him that the injury was not serious. Schmachtenberger was likewise uninformed as to how long plaintiff would be incapacitated. He certainly had good cause to believe that his disability would not last for any great length of time, as plaintiff was never confined to the house or to the bed and the Charity Hospital report, which he examined, described the injury as merely a chip fracture of the bone of the left arm. Under these circumstances, the parties in good faith got together and decided that it would be to their mutual advantage to forever settle the case. At that time, plaintiff was obviously of the opinion that he would fully recover within five weeks and, in order to receive an immediate cash payment, he was eager to adjust his rights on that basis. He was not imposed upon. On the contrary, the agreement was consummated as a result of negotiations which were initiated at his suggestion.

■ It is now shown by plaintiff that his disability has extended for a much longer period than was ever anticipated by either party and that he is now partially permanently disabled. This fact, however, can have no bearing upon the validity of the compromise, for we are satisfied, as was the district judge, that there was a genuine dispute between the parties at the time the agreement was confected. See Young v. Glynn, supra.

Since we conclude that the case was correctly decided in the court below, it is unnecessary for us to consider the asserted liability of the McCray Refrigerator Company, forasmuch as that defendant would not be liable even if it be conceded (as the plaintiff contends) that Schmachtenberger

was acting as its agent at the time the plaintiff was employed.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.