### McDANIEL v. GREAT SOUTHERN LUMBER CO., Inc., et al.

### No. 2137.

Court of Appeal of Louisiana. First Circuit.

Oct. 3, 1940.

Argued before LE BLANC and OTT, JJ.

Ellis & Bostick, of Amite, for appellant.

Ott & Johnson, of Franklinton, for appellees.

LE BLANC, Judge.

The plaintiff herein was formerly employed by Andrew Entravia, one of the defendants, as a pulp wood cutter. Entravia was engaged in the pulp wood cutting and hauling business under contract with the Great Southern Lumber Company, also made a party defendant. W. V. Howland & Co. Inc., general agent for the Central Surety and Insurance Company, carried compensation insurance for the Great Southern Lumber Company and both are also sued as defendants by the plaintiff who, it is admitted, sustained a compensable injury to his right arm while acting in the scope and course of his employment on November 2, 1937.

Plaintiff was paid compensation regularly and on June 20, 1938, was sent to see Dr. William A. Lurie in New Orleans, a specialist in physical therapy and who treated plaintiff for eight weeks, at which time. he noted an improvement which he estimated at 80 per cent. recovery. On discharging plaintiff Dr. Lurie directed the kind of treatment he should take and which, if taken, would have produced full recovery within three months.

On August 3, 1938, the plaintiff and his employer entered into an agreement for a settlement of the matter of compensation between them as authorized by Section 17 of Act 20 of 1914, as amended by Section 1 of Act 38 of 1918. The parties complied with the provisions of the statute by having the settlement approved by a judgment of court. The settlement was for the sum of $135.20 and all costs.

In this suit plaintiff, without asking that the settlement be set aside, nevertheless asks to obtain a judgment for compensation as for total, permanent disability based on wages of $12 per week plus the penalty of 50 per cent. additional provided under the statute for discounting payments under a lump sum settlement at a rate greater than 8 per cent.

In connection with the settlement which was approved by judgment of the district court all that the petition alleges is that plaintiff was called to the office of W. V. Howland & Co., Inc., and there told that he would be given six months' compensation in advance and that if at the expiration of said six months he was still disabled, they (meaning the insurance company) would "take care of him." Plaintiff alleges that he was then asked to sign his name which he did after telling the attorney representing the defendants "You all know what's best." He alleges further that he believed that what he was signing was a receipt for six months' compensation in advance, but in fact it was the compromise agreement to settle his claim in full for $135.20.

The defendants filed a plea of prematurity and exception of no cause or right of action, both of which were overruled by the district judge. They still contend that

the exception of no cause or right of action was properly urged and could be sustained but so strongly convinced are they that the judgment on the merits of the case is correct, they do not insist on a ruling on the exception.

For answer, the defendants admitted that plaintiff had sustained an accidental injury but that his claim for compensation had been settled in full by the compromise agreement which had been openly arrived at and which he had signed with full knowledge of its contents and meaning. Defendants admit the allegations of plaintiff's petition concerning the treatment he was administered by Dr. Lurie but aver that he left Dr. Lurie of his own accord and at his own request because he wanted to be married and return to the country. They aver further that at the time he left, his injury had been corrected to the point where he would have recovered entirely within a few months by following a routine of exercise prescribed by Dr. Lurie. They insist that the amount paid plaintiff was in full settlement of his claim, no reduction in payment being contemplated in case he could return to work before the expiration of the six months' period, and no additional payments to be made in the event his disability persisted beyond that period.

The district judge assigned written reasons for judgment in which he held, in effect, that the settlement made with plaintiff was entered into with the latter's thorough understanding as to what it was, that no advantage was taken of him, that his payments were not discounted·thereunder at a greater rate than 8 per cent.; and therefore it was binding upon him. From the judgment which dismissed his suit, plaintiff has appealed.

We can find no fault in the ruling of the trial judge on the question of the validity of the agreement, on which point, we believe the case can very well be disposed of. On the question of his continued and present disability, plaintiff relies on his own testimony and that of Dr. J. H. McClendon, but the latter, although of the opinion that there is a degree of impairment in the function of plaintiff's arm, may be said to agree with Dr. Lurie to the extent that with treatment and proper exercise he could recover normal use of it as far as might be expected for a man of his age. Dr. Lurie is positive that it is because of the lack or neglect to follow the routine treatment pointed out by him that plaintiff did not have complete recovery within a period of approximately three months following the time he left his care.

Dr. Lurie testified that after treating him some seven weeks with good results, plaintiff seemed anxious to leave New Orleans to return to the country. He spoke of getting married and of getting back home where he had some chickens to look after. Mr. O. J. Laurent, adjuster for the insurance agency of W. V. Howland Company, Inc., testified that he asked him too, to get off so that he could go back home as he had left a lot of chickens behind and he wanted to go back to look after them. Mr. Laurent convinced him for a while that his arm was more important to him than his chickens and to remain for further treatment. Plaintiff persisted, however, in his request to be paid off stating on one occasion that he wanted to be married. Finally, after consulting Dr. Lurie further and on obtaining his opinion regarding the plaintiff's condition, negotiations leading to the settlement were carried on and ultimately consummated.

After an agreement had been reached, Mr. Leslie P. Beard, attorney representing the insurance company, was consulted in connection with the necessary papers which had to be signed and then filed in court, and he testifies that he was very careful in explaining to the plaintiff in detail the whole proceeding and particularly did he emphasize the importance and the necessity of the affidavit he had to make regarding the contents of the petition which had to be presented to the court in order to obtain its approval of the settlement by judgment as required by the compensation statute. The district judge appears to have been favorably impressed with Mr. Beard's testimony and, taken in connection with all the other evidence, concluded as we do, that there is nothing which would justify the charge that this plaintiff was taken advantage of or misled into signing anything but what the papers and documents which he did sign purport themselves to be.

Counsel for plaintiff contend further, however, that at the time the settlement was made, no dispute existed between the plaintiff and his employer and the insurance carrier and in the absence of any dispute the amount of compensation due could not be discounted at a rate greater than

8 per cent. as was done, even though the settlement received the approval of the court. They cite sub-section 9 of Section 1 of Act 242, page 362, of 1928.

The provisions of that sub-section apply, however, in cases where the parties agreed only to commute the amounts payable as compensation to a lump sum settlement and not to cases of settling on matters of compensation between themselves, the right to do which is expressly granted to them by Section 17 of Act 20 of 1914, as amended by Act 38 of 1918. There is a marked distinction between these two provisions as pointed out in the cases of Musick v. Central Carbon Co., 166 La. 355, 117 So. 277, Young v. Glynn, 171 La. 371, 131 So. 51, and Cagnolatti v. Legion Pants Company, La.App., 186 So. 377. The purport of all of these decisions is that the prohibition against lump sum settlements of compensation at a greater rate of discount do not apply in cases of settlements under a compromise arrived at because of a dispute between the parties as to how much may be due or how long the payments may have to continue.

The important question on this branch of the case therefore is whether at the time the settlement between plaintiff and defendants was reached and agreed to on August 3, 1938, any dispute existed between them.

A controversy certainly existed with regard to the amount of weekly wages plaintiff received and on which compensation had to be based. As a matter of fact, according to plaintiff's demand as now set out in his petition and his own testimony, he still maintains that he earned as much as $12 per week whereas the defendants as earnestly insist that he only earned $8 at the very most.

According to Mr. Laurent's testimony the first offer of settlement made by him was not based on any rate of wages or compensation but on a flat sum of $75 which plaintiff took under consideration but later rejected. Mr. Laurent states that he then told him that he would settle for $150 and finally after some discussion between them the amount paid of $135.20 was agreed upon.

The evidence as a whole impresses us as showing that the settlement was in the nature and spirit of a compromise in order to bring to an end all matters relating to plaintiff's compensation. It was such an agreement as is contemplated under the provisions of Section 17, Act 20 of 1914, as amended by Act 38 of 1918 and to which, as we have seen, the prohibition against discounting at a rate greater than 8 per cent. does not apply.

We are satisfied as to the correctness of the judgment appealed from and it is therefore affirmed. The suit having been conducted under the provisions of the Pauper Act, no costs can be assessed.

DORE, J., not participating.