On December 10, 1936, the plaintiff and his employer, the Architectural Stone Company, a subcontractor of Caldwell Brothers Hart, engaged in the construction of a building on the Louisiana State University campus, entered into an agreement of settlement for compensation due the plaintiff for an injury which he received while working for said Stone Company. The Central Surety Insurance Corporation, the carrier of the employer's compensation insurance, was also a party to said agreement.
The agreement recites, in substance, that plaintiff sustained an injury on July 3, 1936, when a tile fell on his head from above where he was working as a common laborer assisting in stucco and plaster work; that plaintiff was taken to the hospital and an X-ray made of his head which showed a fracture of the left parietal bone; that plaintiff was treated for the injury and paid compensation to December 7, 1936, when he was discharged as cured by the employer's physician. The agreement further states that the plaintiff claims that he still suffers from dizzy spells and a feeling of faintness and is still temporarily disabled from doing the type and character of work that he was doing when injured, and in all probability would be so disabled for a period of three months to a year; that the employer admits that plaintiff sustained said injury and that he was paid compensation therefor from the date of the injury to December 7, 1936, at the rate of $11.12 per week but claims that said employee had fully recovered from said injury on said date, and, whereas there is serious doubt and dispute as to the duration, extent and degree of the disability of said employee, the parties entered into said agreement whereby the employer, through its insurance carrier, agreed to pay the further sum of $165.69 as additional compensation, which, together with the compensation and medical expenses already paid, was to be in full settlement for compensation on account of said injury. The settlement was approved by the court and the amount paid as therein stipulated.
The present suit was filed on July 3, 1937, against said Stone Company and its insurer in which the plaintiff claims that he is totally and permanently disabled on account of said injury; that he was induced to enter into said agreement for the settlement of his claim by various acts of fraud and misrepresentation on the part of the attorney for the insurance company, and he alleges that there was no dispute between his employer and himself, and that the payment under said agreement was nothing more than a lump sum settlement discounted at a greater rate of interest than eight per cent per annum, and for that reason he is entitled to recover compensation in a lump sum one and one half times above the amount he would have been entitled to recover had said purported settlement not been made, less the amount already paid. In the alternative, and in case it is held that said settlement was a compromise, then and in that case, he asks that the settlement be set aside for fraud, misrepresentation and ill practice on the part of said attorney and that he be awarded compensation for total permanent disability at the rate of $11.12 per week for a period not exceeding 400 weeks, subject to a credit for the amount already paid.
Several exceptions and additional pleadings were filed and acted upon by the court, but it is unnecessary to detail them here. Separate answers were filed by the Stone Company and its insurance carrier in January, 1939, in which they both plead the former judgment approving the previous settlement as res adjudicata, and plead estoppel against plaintiff on account of the statements made by him in the agreement for the settlement and the petition filed for its approval. They both deny that any fraud or misrepresentation was practiced on plaintiff and aver that the settlement was made in good faith, and plaintiff was in no way imposed upon. They also deny that plaintiff is totally and permanently disabled.
The trial judge sustained the plea of res adjudicata and estoppel and held that the agreement for a settlement and the judgment rendered thereon were binding on the plaintiff and precluded him from recovering any further compensation. The plaintiff has appealed. *West Page 122 
There are several rather serious allegations of fraud and misrepresentation made in the petition against the attorney for the insurance company who handled the proceedings leading up to and the completion of the settlement on which the defendants rely. We agree with the trial judge that no wilful fraud or ill practice was proved on the part of this attorney, and we deem it unnecessary for the purpose of a decision of this case to describe these allegations and discuss the evidence adduced relative thereto.
We also agree with the trial judge that the settlement which was made between the parties and approved by the court was a compromise settlement under the provisions of Section 17 of Act 20 of 1914, as amended, by Act No. 38 of 1918, and not a lump sum settlement under subsection 9 of Section 8 of said act, as amended. It is obvious that there was a dispute between the employee and the employer as to the extent of the injury and the duration of the disability. Both the agreement and the petition signed by the parties and presented to the court showed such a disagreement, and, indeed, the fact that the plaintiff then claimed and is still claiming that he is disabled and the employer then claimed and is now claiming that plaintiff had then recovered shows that there was then and is now a dispute between the parties on this subject.
The jurisprudence of the state at the present time is that a compromise entered into by an employee and employer and approved by the court under Section 17 of the Compensation Act where there is a bona fide dispute between them as to the liability of the employer, the extent of the injury, the duration of the disability, or the amount of compensation, is binding on the employee unless some fraud, ill practice or misrepresentation was employed in inducing the employee to accept the settlement. We list here several cases supporting this jurisprudence: Musick v. Central Carbon Company, Inc., 166 La. 355, 117 So. 277; Young v. Glynn, 171 La. 371, 131 So. 51; Horney v. Scott, La.App., 171 So. 172; Calhoun v. Louisiana Delta Hardwood Lumber Co. et al., La.App., 182 So. 362; Self v. Wyatt Lumber Co., Inc., La.App., 189 So. 327; Walding v. Caldwell Bros. Hart, La.App., 193 So. 501; Forrestal v. McCray Ref. Sales Corp. et al., La.App., 196 So. 516; McDaniel v. Great Southern Lumber Co., Inc., et al., La.App., 197 So. 812; White v. Osterland Knight Timber Co., La.App., 200 So. 674.
We find in the record a copy of an opinion recently rendered by the Supreme Court in the case of Otto Puchner v. Employers' Liability Assurance Corporation, which we understand is now pending on rehearing and which opinion has not been reported. A reading of this opinion indicates, if it should be upheld on the rehearing, that it would have the effect of modifying considerably the jurisprudence announced in the above cases, particularly where the compromise agreement involves a dispute as to the extent of the injury and duration of the disability which the opinion indicates cannot become a matter of speculation and compromise. However, as this opinion has not become final, we do not feel constrained to consider it in this case. Moreover, the opinion would not change the conclusion we have reached under the application of the jurisprudence as it presently exists, should the opinion be re-instated on the rehearing. [5 So.2d 288.]
The record in this case shows that the plaintiff is an ignorant colored man, unable to read and write. He was not represented by an attorney during the negotiations leading up to the compromise settlement. He received his compensation checks through the attorney for the insurance company and seems to have placed considerable reliance on him for advice as to his legal rights. Plaintiff was able to be up and get around at the time the settlement was made, but the doctor who had treated him for the employer told him that he was able to return to work. Plaintiff complained of dizzy spells and a feeling of faintness and insisted that he was not well and could not do the kind of work that he was doing when the tile fell on his head.
It was the opinion of the attorney for the insurance company that plaintiff had a claim for damages against Caldwell Bros. 
Hart, the general contractors whose employee let the tile fall from the third story and which caused plaintiff's injury while he was working on the same building for a subcontractor. Plaintiff claims and the attorney admits that he told plaintiff that he (plaintiff) could get damages for his pain and suffering from the general contractors; that the insurance company was settling with him only for compensation, and he would get what plaintiff describes as his "big money" out of the general contractors; that the attorney told him that *West Page 123 
he could not represent him in this suit against the general contractors for damages, but that he would take plaintiff to a lawyer who would represent him in the suit against the general contractors.
While we have not given all the details with reference to the words used by the attorney in leading plaintiff to believe that he would get damages out of the general contractors in addition to the compensation that was being paid him under the compromise settlement, we think that the attorney was in good faith when he so advised him. Just after the settlement was approved by the court, the attorney did take plaintiff to another attorney who made a demand on Caldwell Bros. Hart on behalf of plaintiff for damages. The general contractors convinced this attorney that they were not liable for damages to plaintiff as his claim for compensation against the subcontractor was his sole and exclusive remedy as was held in the case of Gaiennie Co., Ltd., et al. v. Chisolm Co., 3 La.App. 358. For this reason, no further effort was made to recover damages from the general contractors.
As already stated, plaintiff insisted at the time of the settlement that he was not able to work although he had been discharged by the employer's physician who testified that if he had known at the time that plaintiff was suffering from dizzy spells and faintness he would not have discharged him as able to return to work. The attorney for the insurance company did know that plaintiff was claiming that he had these dizzy spells and faintness as this claim was put in the agreement of settlement prepared by him. The plaintiff testified that the reason he agreed to accept the small amount of compensation in settlement was because of his belief that he would get damages (and what he calls "big money") out of the general contractors. Obviously, this belief on his part was created by what the attorney for the insurance company told him, and under the circumstances it is reasonable to assume that this belief on his part was the principal reason influencing him to accept the settlement. In other words, the principal cause inducing him to accept the settlement failed.
As a general rule, a compromise settlement cannot be set aside for an error of law alone, yet if the error was caused by what was said or done by the other party under such circumstances as to lead the person in error to rely on such act or statement, there is such a mistake as will justify setting aside the agreement. C.C. art. 3079; Reed v. Holderith, 3 La.App. 379; 15 C.J.S., Compromise and Settlement, § 36(c) p. 758. In fact, the mistake under which the plaintiff was laboring at the time he accepted the compromise settlement, was not only an error created by what the attorney had told him were his legal rights, but this error partook both of the nature of an error of law and an error of fact. If an ignorant laborer is not fully advised as to his legal rights and relies on the employer, its attorney or physician, for information affecting his claim for compensation, and by reason of such reliance settles his claim for an insignificant amount because of mistake or error as to his rights, such a settlement is vulnerable to attack by the employee. While Section 17 of the Compensation Law contemplates the settlement of disputes between employer and employee by compromise, yet where the employee is not represented by separate counsel and all the proceedings are carried on by the attorney for the employer or its insurance carrier, the settlement will be carefully scrutinized to ascertain if the employee was laboring under any mistake of facts or error as to his legal rights arising from a failure to disclose to him all the facts in possession of the employer or its agent, or any representations, whether purposely or innocently made, which might have misled him into accepting an amount much less than he would have been willing to accept had a full disclosure been made to him. Applying these principles to the facts of this case, we are forced to the conclusion that the compromise settlement entered into by plaintiff under the circumstances shown by the testimony of both parties, must be set aside, and his claim for additional compensation considered.
A decided preponderance of the medical testimony shows that the plaintiff is suffering from traumatic neurosis as a result of the blow on his head from the falling tile. The medical testimony also shows that the plaintiff is unable to do manual labor, and the indications are that his disability is permanent. Three doctors who examined plaintiff, one of whom treated him for several months, gave it as their opinion that plaintiff's present disability results from the blow on his head. An attempt was made by the defendants to show that plaintiff's condition is caused from tabes dorsalis resulting from syphilis. *West Page 124 
While there is some medical testimony to support this contention, yet Wasserman tests failed to show the presence of syphilis, and we are persuaded to follow the preponderance of the medical testimony and hold that his present disability is total and permanent and results from the injury which he received in July, 1936. Moreover, this medical testimony is also supported by the testimony of lay witnesses that plaintiff suffered no disability whatever before the injury was received.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby avoided, annulled and reversed, and it is now ordered that the agreement of settlement entered into between the parties on December 10, 1936, and the judgment approving same rendered on December 11, 1936, be and they are hereby set aside and annulled; it is further ordered that plaintiff recover compensation from the defendants, Architectural Stone Company and the Central Surety Insurance Corporation, in solido, in the sum of $11.12 per week for a period not exceeding 400 weeks, payable weekly, beginning July 10, 1936, with legal interest on each of said payments from their respective due dates until paid, subject to a credit of $354.45 already paid as compensation. It is further ordered that the defendants pay all costs in both courts. *West Page 241