WARD, Judge.
Donald Kaufman compromised his workers’ compensation claim with Aetna Casualty & Surety Insurance Company in a court-approved settlement on September 15, 1980. In April of 1982, Kaufman filed a petition to annul the judgment approving *1270 the compromise agreement. The Trial Court refused to set aside the compromise and Kaufman appeals, contending that Aet-na induced settlement of his claim through misrepresentation. We agree and reverse the judgment.
Donald Kaufman was a truck driver who delivered drugs to hospitals and drugstores for I.L. Lyons Company, Ltd. Kaufman claims he strained his back on June 22, 1979, while lifting the tail gate of his truck. Kaufman reported the incident to his supervisor, who took him to Dr. Ralph J. McDonough at the Carondelet Clinic. Dr. McDonough determined that Kaufman had strained his lower back, treated him, and referred him to several other physicians chosen by Aetna, the workers’ compensation insurer of Lyons. Aetna paid Kaufman weekly compensation benefits from June to November of 1979. After the payments ended, Kaufman contacted Pearl Atwood, an adjuster for Aetna who had initially handled Kaufman’s claim. Atwood told Kaufman that his benefits had been terminated because Dr. McDonough had informed Aetna that his condition was due to high blood pressure rather than a work-related injury.
Kaufman then returned to work, but within a week, re-injured his back while unloading a truck. Lyons sent Kaufman back to Dr. McDonough and compensation benefits were reinstated from the date of the injury, December 8, 1979.
In September of 1980, a representative of Aetna, Percy Williams, called Kaufman and asked him to come to his office. There, Williams informed Kaufman that Aetna was terminating his benefits. Williams claimed to have a complete file of Kaufman’s medical reports, all of which indicated Kaufman’s injury was not work-related. After going over these reports with Kaufman, Williams made an offer of $2,000 to settle the claim. Relying upon the medical reports and the conversation with Williams, Kaufman decided to settle. He called Williams a few days later and accepted the $2,000 offer. On September 15, 1980, the Court appointed an attorney to represent Kaufman at the compromise settlement. The attorney reviewed the record and recommended that the Judge approve the settlement, and the settlement was executed on the same day.
Kaufman had no further thoughts about the settlement until over a year later when he applied for Social Security benefits after undergoing back surgery. At the Social Security hearing, Kaufman was given a file of his medical records to review. In the file, he discovered reports of a lumbar mye-logram dated August 31, 1979 and an epidural venogram dated September 9, 1979, both from Touro Infirmary’s radiology department. As a matter of fact, Aetna’s adjusters had not seen the results of either the myelogram or the venogram. Consequently, these reports were not attached to the workers’ compensation compromise settlement, nor had they been revealed to or discussed with Kaufman or his attorney at the time of the settlement. Both the mye-logram and venogram indicated possible disc problems, conflicting with the medical reports which Kaufman had seen. Kaufman claims that he would not have settled for $2,000 had he known of these two reports and that Aetna’s representatives misrepresented the facts of his case which induced him to settle his claim. We agree.
Kaufman relies on La.R.S. 23:1273(B) and McCastle v. Architectural Stone Co., 4 So.2d 120 (La.App.1st Cir.1941) as authority for setting aside the compromise agreement. La.R.S. 23:1273(B) provides that a court-approved compromise settlement “shall not thereafter be set aside by the court except for fraud or misrepresentation made or induced by the employer or his insurer.”
In McCastle, the First Circuit Court of Appeal set aside a workers’ compensation settlement due to misrepresentations of fact made to the claimant even though no willful fraud or ill practice was proven. The Court reasoned:
As a general rule, a compromise settlement cannot be set aside for an error of law alone, yet if the error was caused by what was said or done by the other party *1271 under such circumstances as to lead the person in error to rely on such act or statement, there is such a mistake as will justify setting aside the agreement. If an ignorant laborer is not fully advised as to his legal rights and relies on the employer, its attorney or physician, for information affecting his claim for compensation, and by reason of such reliance settles his claim for an insignificant amount because of mistake or error as to his rights, such a settlement is vulnerable to attack by the employee ... where the employee is not represented by separate counsel and all the proceedings are carried on by the attorney for the employer or its insurance carrier, the settlement will be carefully scrutinized to ascertain if the employee was laboring under any mistake of facts or error as to his legal rights arising from a failure to disclose to him all the facts in possession of the employer or its agent, or any representations, whether purposely or innocently made, which might have misled him into accepting an amount much less than he would have been willing to accept had a full disclosure been made to him. 4 So.2d at 123.
Although the McCastle facts are somewhat different from those here, the principles of law, which were adopted by this Court in Carlton v. Great American Insurance Co., 273 So.2d 655, 660 (La.App. 4th Cir.1972), are the same and apply in Kaufman’s case.
The record shows that Kaufman was not represented by an attorney during the compromise negotiations. In fact, he did not meet his court-appointed attorney until the day the settlement agreement was approved. The record shows that Kaufman and his appointed attorney discussed the settlement for about fifteen minutes before it was signed. The attorney testified he had no independent recollection of the case, but, had he known of the two medical reports later discovered by Kaufman, his advice to Kaufman would have been different.
Additionally, both Aetna adjusters who handled Kaufman’s claim, Pearl Atwood and Percy Williams, denied knowledge of the reports, but testified that, had they been in the file, they would have been considered along with the other reports and might have affected Aetna’s offer to Kaufman. At the very least, Williams testified that, had he seen the reports, he would have asked another doctor to evaluate Kaufman’s condition. Atwood testified that Aetna had destroyed Mr. Kaufman’s file; thus, it is impossible to determine if Aetna had actual knowledge or even possessed the reports.
However, we believe actual knowledge or possession of the reports are of little consequence in this case. Since Kaufman was not represented by counsel and all examining physicians were chosen by Aetna, we believe Aetna should be charged with knowledge of whatever information its doctors possessed, including the reports of the lumbar myelogram and the epidural veno-gram.
In his reasons for judgment, the Trial Judge stated that the myelogram and the venogram were both ambivalent and without clinical correlation. We need not decide the evidentiary weight of these medical reports, for that is not the issue. What we do decide is that there was an inadvertent misrepresentation of material fact by the employer’s insurer and La.R.S. 23:1273(B) entitles Donald Kaufman to have his compromise set aside.
Hence, we order that the settlement agreement entered into between Donald Kaufman and Aetna Casualty & Surety Insurance Company on September 15,1980, be set aside and this case remanded to allow Donald Kaufman to petition the Trial Court for workers’ compensation benefits. Aetna Casualty & Surety Insurance Company is to pay all costs of trial and this appeal.
Reversed and remanded.